PROVO STY, J.
The defendant, who was the junior member of the firm of Moorman & Parkerson, desiring to abandon the insurance agency business in which said firm was engaged, in the town of Eranklin, La., and remove to New Orleans to accept employment in the service of the federal government, sold his interest in said business and in said firm to the plaintiff firm, by the following contract;
“Eranklin, Louisiana,
“Jany. 6, 1908.
“The undersigned, Joseph R. Givens, agreed to buy from John R. Parkerson his one-half interest and good will in the firm of Moorman & Parkerson,_ in the insurance business, at Eranklin, Louisiana, for the sum of $1,000. The undersigned, John R. Parkerson, also agreed to sell his one-half interest and good will in the insurance business for the above amount, and agreed not to enter in the insurance business in opposition of either or both of the above-mentioned parties. John R. Parkerson also agreed to give time and attention to the interest and success of the business, as an employé, for not less, than two months from date (for) which he is to receive $80.00 per month. It is understood and agreed * * * that the sale of said interest is * * * to date from the first day of January, 1908.
“[Signed] Jos. R. Givens.
“John R. Parkerson.
“Moorman & Givens.”
The defendant performed that part of the contract by which he engaged to give his time and attention for two months, and then removed to New Orleans. But, not being satisfied in New Orleans, he returned to Eranklin, and in 'September, 1908, formed a partnership with a Mr. O’Neil, and engaged in the very kind of business in which he had bound himself not to engage — in direct competition with • the plaintiff firm. The present suit was instituted to enjoin him from continuing in said business, and to recover damages from him at the rate of $125 per month for the loss of business resulting to plaintiff from said competition.
An exception of no cause of action was sustained by the lower court, and the suit dismissed, but, on appeal to this court, was overruled. Moorman v. Parkerson, 127 La. 885, 54 South. 47. The case was remanded to the lower court for trial, and has been tried on its merits, and is again here on an appeal.
[1] The first defense is that the plaintiff has not paid the price of the sale, and is therefore in no position to demand performance on the part of defendant.
This defense could have availed only if, before engaging in this new business, defendant had put plaintiff in default, and, after having done this, had elected to be no longer bound by the contract, and, accord *207 ingly, had returned, or offered to return, to plaintiff the $400 received from him in part payment of the price. He did not do this, and is not, even now, doing it; but, apparently, proposes to retain the $400 already paid and hold plaintiff bound for the $600, which, he says, has not yet been paid. In other words, he is still standing upon the contract. Such being the case, he cannot refuse to comply with his part of it.
Subsequent to said contract, the parties entered into an agreement with respect, to this $600 said to be still unpaid on the purchase price. But they differ as to what the agreement was. Plaintiffs stand upon this agreement, and contend that, as an effect of it, the $600 has been paid; but are willing and ready, in the event this contention is not sustained, to pay the $600. Defendant admits that because of said agreement he has never demanded of plaintiffs the payment of the $600. Under these circumstances, the nonpayment of the $600 cannot be a defense to this suit. If the said agreement has not been carried out, the remedy of defendant is to insist upon its being carried out, and not to refuse to carry out the contract of which the said agreement forms no part. An analogous case is that of Dietzgen v. Kokosky, 113 La. 449-462, 37 South. 24, 66 L. R. A. 503.
[2] The next defense is that the said contract is null because contrary to public policy. In disposing of the exception of no cause of action on the former appeal, this court said:
“The law will not permit a man to bind himself by contract not to pursue at any time or at any place the calling whereby he earns his livelihood, because, being so bound, he may become a charge upon the community. But contracts whereby men bind themselves never thereafter to pursue a particular calling, within certain, reasonable, geographical limits, or not to pursue such calling at all within a limited and reasonable time, are generally upheld. Oregon Steam Nav. Co. v. Winsor, 20 Wall. 64, 22 L. Ed. 315; Fleckenstein Bros. Co. v. Fleckenstein, 76 N. J. Law, 613, 71 Atl. 265, 24 L. R. A. (N. S.) 913; 9 Cyc. pp. 525, 527.”
The contention is now made that the reason why this court overruled the exception of no cause of action was that the court found that, upon the allegations of the petition, which had to be taken for true, the business in competition with which defendant had bound himself not-to enter was confined to the town of Franklin; and that said reason no longer applies, as the evidence has now shown that the said business is not thus confined, but is state-wide; and that therefore the said contract is obnoxious to the above-enunciated principle of public policy.
The evidence does not show that the said business is state-wide. On the contrary, it has shown that said business is practically confined to the town of Franklin and vicinity. It has shown that some 500 to 800 policies have been written in said business in the town of Franklin and vicinity, whereas only two policies have been written outside of said radius; and that one of these two policies was secured by reason of the fact that one of the members of the plaintiff firm happened to be a director in the company which took out the insurance, and the business was secured through his influence as director.
But, if the evidence had shown that the business was state-wide, this would not have vitiated the contract. Contracts of this kind, though covering an entire state, and even the United States, have been upheld. See 20 Ann. Cas. 661, note, where it is said that:
“The test of the validity of such a contract is not its territorial extent; but its reasonableness, having in view the interest of the parties and the public.”
From 9 Cyc. 529, we transcribe as follows:
“A doctrine has been introduced in some of the later cases, both English and American, whiph may be called the doctrine of the reasonableness of the restraint. This rejects entirely the fixed rules stated in the last section and decides each case according to its particular circumstances. It makes the validity of *209 the restraint depend upon the question whether it is such as to afford a fair and reasonable protection to the party in favor of whom it is imposed. If it is, it is upheld; but, if it goes beyond this and imposes a restraint longer than is necessary for the protection of the party, it is declared void. This doctrine is founded on the idea that public policy requires that where a man, by his skill or by any other means, has obtained something which 'he wants to sell, he should be at liberty to sell it in the most advantageous way in the market,. and in order to enable him to do so it is necessary that he should be able to preclude himself from entering into competition with the purchaser; and therefore the same policy which enables him to do that should not forbid him from alienating what he wants to alienate, but should permit him to enter into any stipulation, however restrictive it may be, provided that such restriction in the judgment of the court is not unreasonable, having regard to the subject-matter of the contract.”
We find nothing contrary to public policy in allowing an insurance agent, who has built up a good will in his business, to dispose of it to the best advantage by engaging not to enter into competition with said business, even though the exclusion should extend over an entire state.
As to the life insurance part of the business, however, we find that it was not covered by said contract. The life insurance part belonged to defendant individually, and not to the firm of Moorman & Parkerson, and the defendant transferred by said contract only his interest in the business of the firm.
[3] The amount of damages in a case of this kind is difficult of proof. As said, however, in Sutherland on Damages, vol. 3, § 658 (3d Ed.) p. 1913:
“The uncertainty is not to work a denial of justice to a party who has been wronged; the damages must be ascertained from all the facts and circumstances as best they may.”
In the present case, defendant has practically deprived plaintiff of the good will which plaintiff gave $1,000 for. He was the principal factor in the firm of Moorman & Parkerson and is the same in his new firm of Parkerson & O’Neil, and the bulk of the business dependent upon his personal influence and popularity has followed him in his new firm, and will there remain, or with Mr. O’Neil, despite any injunction that may now be maintained. The evidence does not show what the earnings of Parkerson & O’Neil have been except in the life and fire insurance, and even in these kinds of insurance only from October, 1908, to February, 1910, inclusive. The former are shown to have been $5,780.39, and the latter $2,151.66 gross, and $1,072.75 net. How much of this amount would have gone to plaintiff if defendant had not re-entered business is the question. If one-half be deducted for the business which was probably controlled by Mr. O’Neil, and one-third of the remainder be deducted for the business which would probably have gone to the competing firm of John O. Lewis & Co., as testified to by Mr. John O. Lewis, we have, say, $350, as the probable amount of the plaintiff’s loss caused by the defendant’s competition.
The judgment appealed from is affirmed in so far as it perpetuates the injunction against defendant, and is set aside in so far as it rejects plaintiff’s claim for damages. And it is now ordered, adjudged, and decreed that plaintiff have judgment against defendant for $350, with legal interest thereon from this date, and that the defendant pay the costs of the suit.