## HICKMAN v. BRANAN.

No. 14524.

Court of Appeal of Louisiana. Orleans.

Nov. 27, 1933.

Henry & Cooper, of. New Orleans, for appellant.

R. B. Todd, of New Orleans, for appellee.

JANVIER, Judge.

Hickman, petitioner, alleging that he owns all of the stock of "The Cotton Trade Journal, Inc.," a publishing corporation, seeks, by injunction, to prevent defendant Branan from engaging in any business in competition with that conducted by the said corporation.

Hickman avers that for several years he and Branan were partners in the publication of "The Cotton Trade Journal"; that in 1928 a corporation was formed under the above set forth name, the stock of which corporation was owned entirely by plaintiff and defendant; that in 1929 a reciprocal option agreement was entered into under which each of the parties was given the right to buy, at a price fixed in the agreement, all of the stock owned by the other; that "either party could constitute a binding contract of sale by exercising his right to purchase under said option before the other should exercise such right"; that the option contract

also provided "that the party selling to the other could not engage in business in competition with The Cotton Trade Journal as owner, proprietor or employee for a period of ten years from the date of the sale of stock"; that petitioner on March 5, 1930, exercising the right granted him under the said option, purchased all of the stock of the said Branan; that notwithstanding the said agreement "on or about the 15th day of August, 1932, in violation of his contract with complainant, the said Will Branan obtained employment with The Cotton Digest Publishing Company, Inc., as business manager of the Cotton Digest, directly soliciting advertising, circulation and other business for 'The Cotton Digest,' a weekly publication serving the cotton trade in exactly the same manner as The Cotton Trade Journal, Inc., above referred to, published by The Cotton Digest Publishing Company, Inc., under a contract by which he will become part owner of said paper in exchange for his services in addition to his salary"; and that the said Branan "has been during the past month soliciting advertising for The Cotton Digest in the City of New Orleans and other territory directly covered by The Cotton Trade Journal."

Alleging that since under the said contract which resulted in the purchase by Hickman of Branan's stock the latter bound himself not to engage in any work of a competitive nature, Hickman prays that Branan be enjoined from engaging in his said employment "as owner, proprietor or employee for a period of ten years from March 5, 1930."

Branan admits all of the facts alleged except that the sale of his stock resulted from the said option which contained the restrictive stipulation and he declares that, although he did sell his stock to Hickman, the sale did not result from the said option agreement but from a subsequent and different contract which contained no such provision.

In the district court the preliminary injunction was issued as prayed for and after a hearing on the merits the injunction was perpetuated; Hickman, however, being required to furnish bond in the sum of $5,000. Branan has appealed and Hickman has answered the appeal, and in his answer contends that the injunction should have been perpetuated without the furnishing of bond on his part.

■ Branan's contention that the sale did not result from the option agreement is based on the fact that the sale did not take place within the time limit set within the original agreement, and on the further fact that at the time the sale was consummated there was executed by Hickman a document which, at first reading, might indicate that it formed the basis of the new contract and that by it the original contract was canceled.

The document to which Branan refers as canceling the previously executed option is in the record and reads as follows:

"New Orleans, La., March 5, 1930.

"In view of the sale and transfer of his stock interest in The Cotton Trade Journal, Inc., by Will Branan to F. G. Hickman, which will nullify previous agreements and contracts of employment, it is hereby agreed by the undersigned that Will Branan shall be continued in the employ of The Cotton Trade Journal, Inc., for the period of five months (21 weeks) from this date, at the salary of $100.00 per week, and that R. J. Raymond shall be continued in the employ of the Cotton Trade Journal, Inc., for the period of three months (13 weeks) at the salary of $32.50 weekly."

A hasty reading of the above might give to the careless reader the impression that Branan's contention is well founded, but a further examination of the evidence annihilates that contention.

It appears that prior to the completion of the sale Branan had been an employee as well as a stockholder of the Cotton Trade Journal, Inc., and had been drawing a regular salary under contract. When Hickman purchased Branan's holdings he (Hickman) wished it understood that the previously existing contract of employment with Branan was to be terminated and that Branan was to be re-employed only temporarily and on a different salary basis.

The said document, it will be noted, limits its effects to "previous agreements and contracts of employment" only and did not affect the terms under which the stock had been sold. This is made very plain from the other evidence we find in the record. Although the sale was not consummated within the time limit set in the option agreement, it is shown that the time was extended by mutual consent and that the negotiations were completed prior to the expiration of the extension.

That the "Cotton Digest" is in direct competition with "The Cotton Trade Journal" is quite apparent.

■■ That such an agreement as was made is not against public policy and is enforceable by injunction was held in Moorman & Givens v. Parkerson, 131 La. 204, 59 So. 122, 124, Ann. Cas. 1914A, 1150.

In that case the court found "nothing contrary to public policy in allowing" a person "who has built up a good will in his business, to dispose of it to the best advantage by engaging not to enter into competition with said business, even though the exclusion should extend over an entire state."

In another portion of its opinion the court found that "Contracts of this kind, though covering an entire state, and even the United States, have been upheld," and cited with ap-

proval a note in 20 Ann. Cas. 661, in which it is said:

"The test of the validity of such a contract is not its territorial extent, but its reasonableness, having in view the interest of the parties and the public."

The true rule thus is that the territorial extent of the inclusion is of no great importance and that the validity of such an agreement depends on whether it is reasonable.

The court in ·the Parkerson Case, supra, cited 9 Cyc. 529, in which the rule is stated as follows:

"A doctrine has been introduced in some of the later cases, both English and American, which may be called the doctrine of the reasonableness of the restraint. This rejects entirely the fixed rules stated in the last section and decides each case according to its particular circumstances. It makes the validity' of the restraint depend upon the question whether it is such as to afford a fair and reasonable protection to the party in favor of whom it is imposed. If it is, it is upheld; but, if it goes beyond this and imposes a restraint longer than is necessary for the protection of the party, it is declared void. This doctrine is founded on the idea that public policy requires that where a man, by his skill or by any other means, has obtained something which he wants to sell, he should be at liberty to sell it in the most advantageous way in the market, and in order to enable him to do so it is necessary. that he should be able to preclude himself from entering into competition with the purchaser; and therefore the same policy which enables him to do that should not forbid him from alienating what he wants to alienate, but should permit him to enter into any stipulation, however restrictive it may be, provided that such restriction in the judgment of the court is not unreasonable, having regard to the subject-matter of the contract."

█ We see nothing unreasonable in requiring Branan to refrain for ten years from engaging in the said business and, therefore, believe that the injunction was properly granted and perpetuated.

█ As we have stated, plaintiff Hickman has answered the appeal contending ·that though the injunction was properly granted no bond should have been required. He maintains that it is manifestly unfair to grant to him a permanent injunction and at the same time make that injunction conditional upon his furnishing bond.

Since on final judgment Hickman is held to be entitled to the relief prayed for he should have it without being required to furnish security. Assuming that he should find it necessary to obtain a compensated surety he would be required to pay an annual premium to such surety for ten years. During the pendency of the application for perma-

nent injunction a bond is, of course, necessary, but that is because damage may be wrongfully caused to the person temporarily enjoined, but 'when the injunction is definitely and finally perpetuated there is no longer any possibility that the defendant may be held entitled to damage. The matter is final. The defendant has lost. If he has sustained damage, it results from his own violation of the original contract. He is enjoined because he is in the wrong.

Article 304 of the Code of Practice seems to contemplate bond only during the pendency of the litigation.

We have been referred to no jurisprudence indicating that where an injunction is perpetuated bond should be required. On the contrary, the only authority to which our attention has been directed confirms us in ·the view that no bond· should be required where an injunction is perpetuated after final hearing.

In Hankins v. Police Jury, 152 La. 1000, 95 So. 102, 104, the Supreme Court of Louisiana said:·

"The injunction in this case results from a judgment upon the merits. It is not necessary that it should have issued preliminarily or that it should have been ordered to issue preliminarily, or that a bond should have been given. It would have been a useless formality to require a bond where the injunction was decreed by the court in its judgment. If a preliminary judgment had been issued upon bond, the judgment perpetuating the injunction would have had the effect of releasing the surety. Besides, the injunction is ineffective because it has been suspended by the motion and order of appeal. Without the appeal it would have been a final judgment without any liability attaching to the surety if a bond had been required. Pending the appeal it could have no effect even if a bond had been ordered, the parties enjoined being at liberty to contract if they had so desired, and a reversal of the judgment would find them in the same position they were before the institution of the suit; while an affirmance of the judgment would stamp it with finality without' any liability whatever attaching to the bond."

It is therefore ordered, adjudged, and decreed that the judgment appealed from be and it is amended so as to read as follows:

"It is now ordered, adjudged, and decreed that there be judgment in favor of Francis Hickman, plaintiff, and against defendant, Will Branan, enjoining and restraining him from continuing his present employment with the Cotton Digest Publishing Company, Inc., and from engaging in any further business in connection with the Cotton Trade Journal as owner, proprietor, or employee, for a period of ten years from March 5, 1930."

And it is further ordered that the judg-

ment as amended be, and it is, affirmed at the cost of appellant.

Amended and affirmed.