41 So.2d 729

**Succession of CONWAY.**

No. 38499.

May 31, 1949.

Rehearing Denied June 30, 1949.

Frederick G. Veith, Robert J. Lacey, Jr., New Orleans, for Mrs. Gertrude Mollegan, Widow of Edward John Conway, plaintiff in rule-appellant.

Edward Rightor and Edwin J. Prinz, New Orleans, for Vivian Clara Miller Ragan, testamentary executrix.

Louis A. Schwartz and Harold M. Rouchell, New Orleans, for John George Miller and Edna B. Condon, defendants-appellants.

HAWTHORNE, Justice.

On November 30, 1942, Edward J. Conway, Miss Edna B. Condon, and John George Miller formed the partnership of Edward J. Conway Company, in which Edward J. Conway received a five-sixths interest and Miss Condon and Miller the other undivided one-sixth interest, or two-thirtieths to Miller and three-thirtieths to Miss Condon. The partnership agreement provided that the partnership was to continue for a term of 10 years. This

partnership was formed for the purpose of continuing the business which had belonged to Mr. Conway's brother, Albert Conway, and which Mr. Conway had been operating since shortly after his brother's death. This business was, in general, that of salvaging, reconditioning, and warehousing all classes of goods and other commodities damaged in rail or water traffic.

Article 9 of the articles of partnership reads as follows: "In the event of death of any partner, an account and statement shall be taken and made out of his or her share of the capital and effects of the partnership, and all unpaid interest and profits belonging to him or her at the time of death, a valuation shall be made of any of said assets or effects requiring valuation, and the amount so ascertained to be due and owing to the deceased partner shall be paid by the surviving partners to his or her representatives within six (6) calendar months from the date of death of said partner, with interest thereon from his or her decease until payment at the rate of five per centum (5%) per annum; and on such payment the shares of the deceased partner in the partnership property and effects shall go and belong to the surviving partners in the proportion in which they shall have contributed to the purchase thereof."

On December 22, 1944, Edward J. Conway, who was the general manager of the partnership, died, and the surviving partners, Miss Condon and Miller, continued

the business under the same name and at the same location, using all its property, assets, books, and records. Although the name of the business was changed in June, 1945, from Edward J. Conway Company to Miller-Condon Company, the business was carried on after Conway's death as it had been prior thereto.

In due course the succession of Edward J. Conway was opened in the Civil District Court for the Parish of Orleans, and Mrs. Vivian Clara Miller Ragan was appointed testamentary executrix. In an inventory made in the succession proceedings, the interest of the decedent in the partnership of Edward J. Conway Company was appraised at the sum of $6,655.77, according to the valuation determined by a certified public accountant who made an audit of the partnership business under an order of court. The surviving partners, Miller and Miss Condon, filed a motion in the succession proceedings within six months from the date of Mr. Conway's death, alleging that the executrix and the surviving spouse were unwilling to accept the appraised valuation, and seeking, under Article 9, to purchase the deceased's interest in the partnership by depositing in the registry of the court the amount of the appraised valuation. This order was granted, and they deposited in the registry of the court as the purchase price of decedent's interest the sum set out above, plus 5 per cent per annum interest, less a debit for income tax paid by the partnership, pending such fur-

ther orders as the court might render in the premises.

Both the executrix and the widow in community, by proceedings filed in the succession, contended, among other things, that the amount so deposited for the interest of the deceased partner was incorrect in that the value of the good will of the business was not taken into account in computing the valuation. The trial court was of the opinion that the good will should have been taken into account, and rendered judgment fixing the valuation of the good will of the partnership of Edward J. Conway Company, as of the date of decedent's death, at $6,000, and fixing the interest therein of the deceased or his succession at five-sixth thereof, or $5,000, and ordering the deposit of this additional amount in the registry of the court. From this judgment all parties have appealed.

John George Miller and Miss Edna B. Condon take the position in this court that, under Article 9 of the partnership agreement itself, it was never intended that good will, as such, was to be included in a valuation of a deceased partner's interest in the purchase thereof by his surviving partners, and that by its very terms the agreement did not include any consideration for good will as among the partners as distinguished from a sale to a third person, but intended payment by the surviving partners for the interest of the deceased to be based on book value and physical "effects" and not on all the assets of the partnership; that, unless good will is expressly included as a factor to be considered in arriving at the deceased partner's interest, under the jurisprudence of this state it is to be excluded. In the alternative they contend that, if this court should find that the surviving partners have to account to the surviving spouse and the representatives of the decedent for the item of good will in computing the valuation of the decedent's interest in the partnership, then, due to the particular nature of this business, good will as such has no value insofar as a transfer to the surviving partners is concerned.

The executrix contends that, under the provisions of Article 9 of the partnership agreement, good will must be included in fixing the valuation of the partnership, and she and the surviving spouse contend that the valuation of good will fixed by the lower court at $6,000 is incorrect, and that under the evidence such valuation should be increased. The surviving spouse, in brief filed in this court, does not question the right of the partners to have entered into this agreement for a term of 10 years and to have stipulated that the shares of a deceased partner should go and belong to the surviving partners upon the payment to the representatives of the deceased of the amount ascertained to be due and owing, but denies "that the surviving partners had the right to use the property of the widow in community for a period of six months after the death of her husband

without having to account to her for the amount of profit her shares earned during this period"; for she contends that, if such agreement is construed otherwise, it is violative of her vested rights in her share of the community which existed between her and her deceased husband.

Article 9 of the partnership agreement provides that, in the event of death of any partner, an accounting and statement shall be taken and made of his or her share of the capital and effects of the partnership; that a valuation shall be made of any of said assets or effects requiring valuation, and that upon payment of this amount by the surviving partners the share of the deceased partner in the partnership property and effects shall go and belong to the surviving partners in the proportion in which they shall have contributed to the purchase thereof.

The first question presented is whether, under the language of this article of the partnership agreement, good will should be included in fixing the value of the capital and effects belonging to the partnership; or, stated somewhat differently, whether good will is part of the capital and effects of the partnership on which a valuation should be placed in computing the assets and effects belonging to the partnership, and whether it constitutes a part of the property and effects which go to the surviving partners upon payment for the decedent's interest as required by the article.

The good will of a partnership is as much an asset as the fixtures and any other tangible property belonging to the partnership. It is property, recognized and protected by law as such, and capable of sale and transfer from one owner to another. Ruppe v. Utter, 76 Cal.App. 19, 243 P. 715; Texas & P. Ry. Co. v. Mercer et al., 127 Tex. 220, 90 S.W.2d 557, 93 S.W.2d 376, 106 A.L.R. 1299; Mann et al. v. Fisher et al., D.C., 51 F.Supp. 550; Rowley, Modern Law of Partnership, sec. 315, p. 370.

By the terms of Article 9 of the partnership agreement, good will—being an asset of the partnership and constituting property—was to be considered in determining the value of the property of the partnership, and we conclude from the language used in the article that it was the intention of the parties to this agreement that the good will of the partnership be so considered.

We do not think that there is any merit, therefore, in the contention of counsel for the surviving partners that the agreement indicates clearly that it was the intention of the parties thereto in determining the decedent's interest in the partnership to consider the book value and the physical effects only.

"The former rule, that the good will of a business goes to the surviving partners and need not be accounted for to the representatives of the deceased, no longer prevails in England or in the United States.

The good will of a firm is built up by the combined industry and credit of the partners, and if it can be disposed of— that is, if the firm business can be sold as that of a going concern—the representatives of the deceased are entitled to have an accounting of the value of the good will. It frequently happens that the survivors continue the business, and that they buy the share of the deceased partner. In such a case they succeed to the benefits arising from the favor which the business has obtained, and may be compelled to account for those benefits." Gilmore on Partnership, secs. 49–51, p. 141. See also Rowley, op.cit. supra, sec. 326, p. 383.

In Tennant et al. v. Dunlop et al., 97 Va. 234, 33 S.E. 620, 624, we find the following:

"As to his claim, as surviving partner, to the good will and trade-marks as of right, he was clearly mistaken. Whatever may have been the earlier decisions of the courts upon this subject, it is now the settled law that the good will and trade-marks of a business are partnership property, and must be accounted for by the surviving partner, the same as the other assets of the firm. * * *"

The surviving partners cite the case of Liquidators of Nicholson Pub. Co., Ltd., v. E. S. Upton Printing Co., 152 La. 270, 93 So. 91, 93, in support of their contention that, unless good will is expressly included in any agreement, it is to be excluded. In that case this court was considering a sale by the Nicholson Publishing Company of the Picayune Job Shop, together with the good will of the shop, to the defendant E. S. Upton Printing Company. In the course of the opinion the court stated that "In the absence of any express stipulation to the contrary in the contract [of sale], the Nicholson Publishing Company would not have been precluded from setting up the same kind of business and in the same neighborhood of that of the 'Picayune Job Shop' * * *". In the instant case we are not dealing with a sale by the partnership to a third party in which no mention is made of good will; the question here is whether the value of the good will should be taken into consideration in determining the interest of the deceased partner in the partnership when his interest is purchased by the survivors pursuant to the terms of Article 9 of the partnership agreement. The cited case therefore has no application.

We are of the opinion, from a study of the authorities on the liability of the surviving partners to account to the heirs of the deceased partner for his share of the good will, that the better rule would be that, unless good will is expressly excluded in an agreement such as we have in this case, it is included.

There is no merit in the contention of the surviving spouse that the surviving partners did not have "the right to use the property of the widow in community for a period of six months after the death of her husband without having to account

to her for the amount of profit her shares earned during this period". As pointed out hereinabove, she does not question the legality of the stipulation providing that the share of the deceased might be purchased by the surviving partners. By the very terms of the agreement, the interest of her deceased husband in the partnership was to be determined as of the date of his death, and his legal representatives were to be paid the full amount thereof. The surviving partners were obligated to pay within six months from the date of his death the amount so determined to be due, together with 5 per cent per annum interest of the amount found to be due until paid. The partners as individuals did not own the partnership property; it belonged to the partnership, which had the control and administration thereof. The widow had only the right to receive her community share in the property as of the date of her husband's death, and had no right to participate in the business after his death. Therefore, under these facts and circumstances, the agreement did not divest the surviving spouse of any of her vested rights in her share of the community.

In the instant case it is somewhat difficult for us to determine the valuation of the good will of the partnership, which the trial judge fixed at $6,000. Two certified public accountants, both qualified as experts, testified in the lower court with reference to the value of the good will. One of these experts testified that

the good will of the partnership had no value, or, if any, very little, for which he personally would not give $250. He based this valuation principally on the nature or type of the business, stating that it was a service business and to some extent a personal service business, which owned tangible assets of a very nominal value. The other expert valued the good will in excess of $30,000, determined by what he stated was a recognized accounting method and based on what he computed to be the average annual profit of the business with certain adjustments and deductions.

The partnership, of which the deceased owned a five-sixths interest, earned a net profit of $50,900.03 from its formation to the date of Mr. Conway's death, a period of about two years and two months, and its net revenue or income for this same period amounted to $236,429.39. After his death, the partnership continued as a going concern. All of its accounts were retained by the surviving partners, who continued to do business at the same location and with most of the same customers, among these being several important railroads. It is significant to note that for the year immediately following Mr. Conway's death, that is, the year 1945, the business had a gross income of $85,000 and a net profit of $13,000 after payment to the surviving partners of salaries totaling $6,700.

The tangible assets of this partnership had a very nominal value, somewhat in

excess of $6,000 according to one of the experts. From this we can reasonably deduce that the large profits of the partnership were not in their entirety a return from its tangible assets, and that good will was an important element in the earning of these profits.

A report of one of the certified public accountants furnishes us with information as to the salaries of the three partners in this business. One of the surviving partners, Miller, was not actively engaged in the business until August, 1944, although he owned a two-thirtieths interest therein, and drew a salary of only $25 per month up to the time he began active participation in the business, and of $65 per week thereafter. Miss Condon, on the other hand, had been actively engaged in the business even prior to the formation of the partnership. Her salary up to the year 1944 was $115 per month, and thereafter was fixed at $65 per week plus $100 per month. Edward J. Conway, the deceased, was the principal owner, his interest being five-sixths, and was general manager of the partnership, and prior to the year 1944 drew a salary of $250 per month, and thereafter, until his death, his salary was fixed at $675 per month.

We do not agree with the expert who testified that the good will of this partnership had little if any value, since we are of the opinion from all the facts and circumstances that the good will, as such, had a very substantial value. We can-

not, however, accept the valuation of $30,000 placed on the good will by the other expert. In arriving at this figure, he admitted that he considered the profits realized during this period to be high due to the increase of business during the war years, and, with this factor in mind, arbitrarily deducted an amount therefrom. We do not think his deduction under these circumstances was sufficient, nor do we fully sanction the method used by him in arriving at this figure.

The value of the good will of a business is naturally not susceptible of determination with exactitude but must be determined from all the facts and circumstances in each case as best it can. Commissioner of Corporations and Taxation v. Ford Motor Co., 308 Mass. 558, 33 N.E.2d 318, 139 A.L.R. 936; Schuh Trading Co. et al. v. Commissioner of Internal Revenue, 7 Cir., 95 F.2d 404. In view of all the facts and circumstances of this particular case, a valuation of $12,000 on the good will of the partnership seems to us to be reasonable, equitable, and fair.

For the reasons assigned, the judgment appealed from is amended so as to fix the value of the good will of the partnership of Edward J. Conway Company, as of the date of decedent's death on December 22, 1944, at $12,000, the interest of the decedent or his succession being five-sixths thereof, or $10,000, and it is ordered that John George Miller and Miss Edna B. Condon deposit this amount in the regis-

try of the court, for the account of the Succession of Edward John Conway pursuant to the terms of the judgment appealed from; and as thus amended the judgment is affirmed. Costs of this appeal are to be paid by John George Miller and Miss Edna B. Condon.

O'NIELL, C. J., does not take part.