CHRIS T. BARNETTE, Judge.
This case is before us for the second time. The first appeal was from a district court judgment dismissing plaintiffs’ suit on exceptions of no right and no cause of action. The judgment was reversed and the case was remanded with instructions. Hirsh v. Miller, La.App., 167 So.2d 539 (1964).
An accurate statement of the case was made by this Court, through Yarrut, J., in the earlier case as follows:
“Plaintiffs allege that Dennis Miller, acting individually and as president of a Louisiana corporation known as A & M Pest Control Service, Inc., entered into several written agreements whereby the corporation, A & M Pest Control, was sold to Plaintiff Hirsh or his nominee, A & M Pest Control Service, Inc., of Georgia; in four separate _ documents, all attached to Plaintiffs’1 petition, viz:
(1) An agreement dated February 21, 1957;
(2) A bill of sale dated February 28, 1957;
(3) An employment agreement dated February 28, 1957, between A & M Pest Control Service, Inc., of Georgia and Dennis Miller, and,
(4) A lease dated February 28, 1957 between Dennis Miller and the A & M Pest Control Service, Inc., of Georgia.
“Plaintiffs ask the Court to enjoin Defendant, Dennis Miller, and the Dennis Miller Pest Controls, Inc., from engaging in the pest control business for a period of five years from October 3, 1963; from calling upon any customer or customers of Plaintiffs; from inducing, encouraging, enticing, or attempting to induce and encourage and entice, any or all of the present employees of Plaintiffs to leave their employ and commence their employment with Miller; and from using the name Miller in any manner, whether by title, slogan or trade name, in connection with any form or type of pest control business.”
After a rehearing was denied in this Court on October 7, 1964, an application for writs was refused by the Supreme Court on December 1, 1964, and the case was remanded for further proceedings in the district court. The plaintiff A & M Pest Control Service, Inc.,[1] then filed a “second amended petition” through which Dennis Miller, Jr., was named and joined as a party defendant along with Dennis Miller, Sr., and Dennis Miller Pest Controls, Inc.
As to the original defendants, Dennis Miller, Sr,, and Dennis Miller Pest Controls, Inc., both of whom were before this Court in the former appeal, our decision in that case stands as the law of the case and as to them we will not again discuss the issues determined in that appeal. La. State Bar Ass’n v. Theard, 225 La. 98, 72 So.2d 310 (1954) ; Cloud v. Cloud, 145 So.2d 331 (La.App.3d Cir. 1962); Keller v. Thompson, 134 So.2d 395 (La.App.3d Cir. 1961) ; 5B C.J.S. Appeal and Error §§ 1821, 1823 (1958). Counsel for defendant-appellee Dennis Miller, Sr., concede in their brief that he is bound by our former opinion, without conceding its correctness, and that it “established the ground rules for the contest at this time.” While no such concession has been made by coun *313 sel for appellee Dennis Miller Pest Controls, Inc., it is certainly no less bound.
Defendant-appellee Dennis Miller, Jr., contends, and we agree, that he, having not been made a party defendant until after the remand from this Court following the earlier appeal, is not bound by this Court’s decision on that appeal. For the reasons hereinafter given and the rationale upon which this opinion will be based, we may for the moment, exclude the defendant-appellee Dennis Miller, Jr., from our consideration.
As to the two defendants, Miller, Sr., and Dennis Miller Pest Controls, Inc., our former opinion determined the following:
(1) That the four above-mentioned agreements dated (the first one) February 21, 1957, and (the other three) February 28, 1957, were interrelated and must be treated together.
(2) That “[t]he employment contract involved here between Plaintiff and Defendant Miller was not a separate and distinct employment contract, but was part of the consideration of the purchase from his company of all its assets, trademarks, trade names and goodwill.”
(3) That defendant Miller’s contention that he was not bound by the provision in the employment contract against re-engaging in a competitive business under LSA-R.S. 23:921 was not valid, holding:
“A reasonable prohibition against competition will be upheld, however, when as alleged by Plaintiffs, it is part of the consideration for the sale of a business and its good will; Moorman & Givens v. Parkerson, 131 La. 204, 59 So. 122; Eugene Dietzgen Co. v. Kokosky, 113 La. 449, 37 So. 24, 66 L.R.A. 503; Hickman v. Branan, La.App., 151 So. 113; 27 Tul.L.Rev. 364.”
(4) . That if, as alleged, the corporation of which Dennis Miller owned 80 percent of stock is engaged “in the identical business of pest control and using the same technique in seeking to recapture the business previously sold” that such activity must be considered “as though Dennis Miller, individually, were so engaged.” Citing Meraux v. R. R. Barrow, Inc., 219 La. 309, 52 So.2d 863 (1951); Keller v. Haas, 202 La. 486, 12 So.2d 238 (1943); Brown v. Benton Creosoting Co., 147 So.2d 89 (La.App.2d Cir. 1962); Ballero v. Heslin, 128 So.2d 453 (La.App.4th Cir. 1961); J. Alfred Mouton, Inc. v. Hebert, 199 So. 172 (La.App.1st Cir. 1940); Lindstrom v. Sauer, 166 So. 636 (La.App.Orleans 1936).
(5) That full injunctive relief should be granted as prayed for, if after proper hearing on remand the allegations of the petitions and the documents attached thereto are as alleged.
The only question left for determination by the district court on remand, as far as Dennis Miller, Sr., and Dennis Miller Pest Controls, Inc., were concerned, was:
(1) (a) Did Dennis Miller, individually or through the corporate veil of Dennis Miller Pest Controls, Inc., in fact engage in a competitive pest control business in the prohibited area, and if so, (b) was it in violation of the employment contract?
By subsequent events, namely the transfer by Dennis Miller, Sr., of all stock owned by him in Dennis Miller Pest Controls, Inc.,[2] to his sons and business associates on December 30, 1964, and the election of Dennis Miller, Jr., as president of the de *314 fendant corporation, the following questions are added for our determination:
(2) Has the ownership and control of Dennis Miller Pest Controls, Inc., so changed that it has been purged of its characterization as the alter ego of Dennis Miller, Sr. ?
(3) To what extent is Dennis Miller, Jr., who has been joined as a party-defendant, individually bound by the terms of his father’s employment contract ?
We discuss these questions in the order listed above. Our answer to question (1) (a) is an emphatic yes. As a matter of fact, the defendant Miller, Sr., makes no denial of this and it is judicially admitted both in his answer and in that of Dennis Miller Pest Controls, Inc. He began this competitive business immediately upon termination of his employment with plaintiff on or about October 3, 1963, and organized the defendant corporation on October 17, 1963. Throughout his testimony and in briefs in his behalf and in behalf of the corporation, these facts are freely discussed and alluded to.
Allegations were made that Miller had contacted and solicited customers of plaintiff in an attempt to induce them to discontinue their accounts with plaintiff and give their business to his corporation. Certain specific large accounts were named. Much time was consumed in the lengthy trial with testimony relative to these allegations. At the conclusion of the trial and arguments, the trial judge stated from the bench, as recorded in the transcript of testimony, that no evidence had been adduced to prove that Miller had contacted or attempted to induce any of these named customers. In the first place, we think this is immaterial in view of Miller’s judicial admissions of engaging in a competitive business. In the second place, we find abundant evidence in the record to substantiate the charges that Miller did in fact solicit and attempt to induce plaintiff’s customers to give their accounts to him. On¡ this finding of fact the trial judge was-manifestly in error.
The record clearly establishes by Miller’sown testimony the foregoing fact in the-following words: “Well, again I say I solicited all accounts, but I am sure in that group [the specifically named accounts]' when I was soliciting and I was making calls that there might have been some of A & M’s customers, yes.” There is no-need to discuss in further detail Mr. Miller’s-testimony nor that of other witnesses on. this subject. The allegations were supported with abundant testimony.
Moreover, allegations or proof of Mr.. Miller’s, personally or through agents or employees, having actively solicited plaintiff’s customers or of the extent to which such solicitations were successful are immaterial to the issue at this state of the-proceeding. It might be important in determining damages, if and when that stage of the proceeding is reached, but insofar as the. preliminary injunction is concerned it is only necessary to prove that Miller did in; fact engage in the pest control business in competition with plaintiff, in violation of a contractual obligation not to do so. This answers our question (1) (a).
Question (1) (b). Defendant Miller judicially admitted in Article XI of his answer to plaintiff’s original petition and in Article 21 of his answer to plaintiff’s supplemental petition, and defendant Dennis Miller Pest Controls, Inc., judicially admitted in Article 3 of its answer that the defendant corporation had been organized by Miller and began operating a competitive pest control business in October, 1963. Their defense is not a denial of competition but that Miller was not in violation of the employment contract in doing so.
Defendants take the position that plaintiff terminated the employment contract of February 28, 1957, at the end of the first year (February 28, 1958) by not complying with its terms relative to salary *315 increase and that Miller’s continued employment from that date to October 3, 1963, was on a month-to-month basis. They contend that the contractual employment was at an end as of February 28, 1958, and that Miller’s engaging in a competitive business in October, 1963, being more than five years from that date, was not a breach of his obligation. Copies of letters filed in evidence reveal that Miller did protest plaintiff’s noncompliance with the salary increase obligation and plaintiff was notified by Miller’s attorney in April, 1958, that Miller would treat the employment contract as terminated by plaintiff on account of this default. But Miller concedes that plaintiff had the right under the terms ■of the contract to terminate the employment on fifteen days’ notice.
In the alternative, should the Court not bold as above contended, defendants contend that the provisions of the executory agreement of February 21, 1957, fixed the expiration of the covenant not to compete at five years from date of employment and that the obligation there imposed upon him expired on February 28, 1962. Finally, defendants contend that any disability which Miller would be under by virtue of the sale •of “goodwill” ended five years after the sale on February 28, 1962.
Our disposition of these contentions will answer our question (1) (b).
The agreement of February 21, 1957, contained the following:
“As part of the consideration hereof, at the time of passing of the sale, Miller agrees to execute an employment contract with Hirsh or his nominee. Said contract shall contain the usual and customary clauses and consist of his exclusive hiring out of his services as a public relations counsellor and salesman in the business to be conducted by Hirsh or his nominee. Said contract shall be cancellable at any time at the option of Hirsh or his nominee. Miller shall be paid the sum of Fifteen Thousand ($15,000.00) Dollars as a salary for the first year on a monthly basis of One Thousand Two Hundred Fifty ($1,250.00) Dollars per month, thereafter the salary shall increase at the rate of Two Thousand Five Hundred ($2,500.00) Dollars per year. The aggregate payments contemplated for the five years, unless said employment contract is previously can-celled, is One Hundred Thousand Dollars ($100,000.00) Dollars [sic]. Said contract shall contain a covenant not to compete in a similar business, against Hirsh or his nominee, applicable for a period of five years, regardless of whether or not the employment lasts that long and even if the employment part thereof is cancelled sooner, for any reason.” (Emphasis added.)
The employment contract executed pursuant to the foregoing on February 28, 1957, stated its term to be five years “unless sooner terminated as will be provided herein.” It contained the salary agreement as set out in the contract of February 21 and a clause reserving to the employer a right to cancel the agreement at any time upon giving fifteen days’ notice to the employee. The covenant not to compete was worded as follows:
"It is agreed between the parties hereto that upon the employee withdrawing from the employment of the Employer, either voluntarily or otherwise, he shall not within a period of five years from the date of withdrawal as an employee of the Employer engage in business in competition to the business of the Employer either as a director, stockholder, employee, agent or salesman or in any manner whatsoever, either directly or indirectly, within the State of Louisiana or State of Georgia, and should there be a violation of this covenant not to compete, the Employer may proceed in equity or at law to enjoin any violation of *316 this provision of this employment contract.” (Emphasis added.)
The trial judge sustained defendants’ defense, first on the contention that the employment contract was terminated on February 28, 1958, and secondly, on the alternative defense that Miller’s sale of the goodwill of his business “prevented Miller or any of Miller’s corporations or nominees” from engaging in competitive business only for five years from the date of the transaction under the February 21, 1957, agreement. It is our opinion that he was in error.
 It may be conceded that plaintiff, by its failure to give Miller the salary increase after February 28, 1958, as agreed, terminated the employment contract. But it had a right to terminate on fifteen days’ notice, and it did not breach the contract by so doing. It was not the terminal date of the employment contract which marked the beginning of the five year period of Miller’s agreement not to engage in a competitive business, but rather the terminal date of employment—“upon the employee withdrawing from the employment of the Employer, either voluntarily or otherwise.”
Defendant Miller contends that plaintiff terminated the employment contract on February 28, 1958, by not increasing Miller’s salary as provided therein. He admits that he did not “withdraw voluntarily or otherwise” and that he continued in plaintiff’s employ until October 3, 1963 (at which time, according to his version, he was “fired”), but he insists his employment after February 28, 1958, was on a month-to-month basis and not under the employment contract which plaintiff had terminated. We fail to see any distinction. Whether or not the contract terminated on February 28, 1958, the fact remains that Miller was an employee of plaintiff until October 3, 1963. His covenant binds him not to compete for five years after the termination of his employment and is not affected by a change in, or termination of, the contract out of which his employment arose. The covenant was a part of the total consideration for the purchase of Miller’s business. The plaintiff has not violated any of the terms-of the contract. If it can be said that plaintiff terminated the employment contract, it must be conceded that it had a right reserved to do so, but the employment was not terminated until October 3, 1963.
We have only to determine therefore if Miller was bound by the contract of February 21 or February 28. Insofar as these two agreements may be in conflict, as we have pointed out above, we hold' that the latter must prevail. The provision-in the employment contract is more specific and was the final declaration of the intent of the parties. Indeed, the language of the executory contract (February 21) indicates that the specific covenant was yet to be drafted as were many other provisions of the documents to be signed on February 28. We therefore hold that Dennis Miller’s engaging in a competitive business was in violation of his contract with plaintiff.
Having held on first appeal that the acts of Dennis Miller, Sr., and Dennis Miller Pest Controls, Inc., are to be considered as the acts of Dennis Miller individually, we now hold that the district court was in error (unless subsequent events changed the circumstances after remand) in not granting the injunctive relief prayed for against Dennis Miller, Sr., and Dennis Miller Pest Controls, Inc., for we find that “the allegations of the petitions,. and the documents attached thereto, are as alleged” (quoting from our former opinion).[3] This answers our question (1) (b).
We must now answer, in the light of subsequent events, our above questions (2) and (3).
Immediately following the denial of writs by the Supreme Court after our former opinion and remand, Dennis Miller, Sr., *317 transferred the ten shares of stock which represented the total issue of Dennis Miller Pest Controls, Inc., to various friends and members of his family. Dennis Miller, Jr., purchased two and one-half shares and became president of the corporation. Albert Kerr Miller, another son of Dennis Miller, purchased one share. Clem Sehrt, attorney for Miller, Jr., and trustee of a trust established for the minor children of Miller, Sr., purchased one share in his capacity as trustee. One and one-half shares were purchased by John Sehrt, son of Clem Sehrt and a close friend of the Miller family. One-half share went to Gerald Tullier, an employee of the corporation, a close friend of Miller, Sr., and godfather of his son, Gerald Joseph Miller. The remaining three and one-half shares went to James A. Moreau, who was employed as general manager of the corporation. Moreau’s contract of employment required that he transfer his shares back to the corporation if his employment terminated for any reason within five years. Miller, Sr., was employed by the corporation as “technical adviser,” and the business continued to operate out of the basement of his home.
We think that the evidence makes it abundantly clear that the corporation remains so closely associated with Dennis Miller, Sr. that it is his alter ego. We are convinced that Dennis Miller, Sr., is the dominant personality around whom the defendant corporation which bears his name operates. His transfer of stock to the persons named and his remaining in the corporate family as “technical adviser” indicates that he has no intention of withdrawing from his dominant position in the corporation. Effective justice requires that whatever injunctive relief is granted to the petitioner in regard to Dennis Miller, Sr., be extended to the corporation. This answers question number (2).
The third and final question which has been posed requires the determination of whether or not Dennis Miller, Jr., is bound not to compete in his individual capacity. It is clear that he cannot compete as an agent or employee of his father or as an agent, employee, or officer of the corporation. However, he was not a party to the employment contract which contained the covenant and he is not bound thereby. We conclude that petitioner is not entitled to bar Dennis Miller, Jr., from engaging in the pest control business in his own behalf.
For the reasons stated, the judgment of the district court is affirmed insofar as it pertains to Dennis Miller, Jr., and it is reversed and set aside insofar as it pertains to Dennis Miller, Sr., and Dennis Miller Pest Controls, Inc. The case is remanded to the district court with instructions that the court enter a preliminary injunction in favor of petitioner and against Dennis Miller, Sr., and Dennis Miller Pest Controls, Inc., jointly, severally, and in solido, enjoining, restraining and prohibiting Dennis Miller, Sr., and Dennis Miller Pest Controls, Inc., and all officers, agents, employees, and any other person, partnership, or corporation, acting on behalf of or in concert with them, directly or indirectly, within the estates of Louisiana and Georgia, from:
(a) Engaging in, entering in, assisting in, or in anywise participating in any type of pest control business or pest control service for a period of five years commencing from October 3, 1963; and
(b) Calling upon any customer, or customers, of petitioner for the purpose of soliciting and/or selling any pest control service for the regulation, control, extermination and eradication of pests, roaches, rodents, termites, and other insects.
Costs of this appeal are to be borne by defendants Dennis Miller, Sr., and Dennis Miller Pest Controls, Inc.
Affirmed in part; reversed in part; and remanded.

. Bari Hirsh was dismissed as a party plaintiff, being without right of action on account of his interest having been assigned to the other plaintiff A & M Pest Control Service, Inc., a Georgia corporation. Hirsh v. Miller, supra.

. It was proved on trial of the case on remand that Dennis Miller, Sr., owned 100 percent of the stock of Dennis Miller Pest Controls, Inc., rather than 80 percent as alleged by plaintiffs and mentioned in our earlier opinion.

. 167 So.2d at 543.