207 So.2d 190 (1968)
Elster Paul DESSELLE, Jr.
v.
Mr. and Mrs. Charles A. PETROSSI.
No. 2894.
Court of Appeal of Louisiana, Fourth Circuit.
February 5, 1968.
Rehearing Denied March 4, 1968.
Writ Refused April 19, 1968.
Robert S. Link, Jr., and Burton G. Klein, New Orleans, for plaintiff-appellant.
Stringer & Manning, James O. Manning, New Orleans, for defendants-appellees.
Before REGAN, SAMUEL, and BARNETTE, JJ.
BARNETTE, Judge.
The plaintiff, Elster Paul Desselle, Jr., purchased from defendants Mr. and Mrs. *191 Charles A. Petrossi a seafood restaurant and bar business and also leased from them the building in which the business was established. The acts of sale and lease contained identical clauses which stated that the vendors (lessors) "further agree and covenant that they will not enter into, promote or open a seafood restaurant and bar business anywhere in the metropolitan New Orleans area * * * for a period of five years from the date of the execution of this lease."
Plaintiff brought this suit to enjoin Mr. and Mrs. Petrossi and Harahan Seafood Market, Inc., from the alleged violation of the covenant. After a trial on the merits for a permanent injunction, there was judgment denying the injunction and dismissing plaintiff's petition. From that judgment he has appealed.
A motion to dismiss the appeal was denied by us in an opinion handed down November 6, 1967. See La.App., 203 So.2d 567. Counsel for defendants by oral argument and brief has reurged the motion. The points which he seeks to reargue were all disposed of in our earlier opinion and require no further discussion here.
The facts of the sale and lease are not disputed. The defendants Mrs. and Mrs. Petrossi for a number of years operated Charlie's Seafood Restaurant and Bar on Jefferson Highway in Harahan, Jefferson Parish. They had built up a substantial business and goodwill. On or about January 11, 1966, an act of sale was executed by which Desselle purchased Charlie's Seafood Restaurant and Bar, as a going concern, from Mr. and Mrs. Petrossi for the case price of $15,000 for the goodwill and $4,000 for the restaurant equipment. Concurrently a lease was executed whereby Desselle would occupy the building owned by Petrossi at $550 monthly rental for five years. Additionally it was agreed that Mr. and Mrs. Petrossi would work for Desselle for two weeks at $100 per week each to facilitate the transfer of ownership and management with a minimum of disruption and to teach him their operations. This included contacts with the sources of supply of shrimp, crabs, oysters, and other seafoods; the preparation for cooking; the cooking methods; introduction to customers, etc.
It is evident that Mr. and Mrs. Petrossi had built up a good reputation for well-prepared seafoods, includingbut not limited toboiled shrimp, boiled and stuffed crabs, boiled crawfish and seafood gumbo. That plaintiff thought so is evident from the fact that he paid $15,000 for this goodwill.
We will adopt the statement of the case and findings of fact as given by the trial judge in the following respects:
"The crux of the case is that the named defendants, after selling the business and leasing the premises to the plaintiff and agreeing as aforesaid, did thereupon [on September 27, 1966] enter a business in the nature of a corporation called the Harahan Seafood Market, Inc., located in the same general vicinity as was the subject business. The operation into which they engaged as the Harahan Seafood Market, Inc., was to sell at wholesale and retail, fresh or raw seafood and certain cooked seafood, these being in the main boiled shrimp, boiled crabs, boiled crawfish, gumbo, stuffed crabs and items of similar nature.
"The evidence shows that these same operations were engaged in by the defendants when they operated Charlie's Seafood Restaurant and Bar which they soldthat is that these same cooked items of food were sold to customers to eat on the premises if they wished but also to take out and eat elsewhere.
* * * * * *
"* * * on the merits I find as a matter of fact that the defendants were engaged in the operation of a seafood restaurant and bar and that they sold this business together with the goodwill to the plaintiffs and at the same time they leased the premises upon which the *192 business was conducted, to the plaintiff. Both of these documents contain therein the restrictive covenant abovementioned prohibiting the defendants from `entering into, promote or open in * * * a seafood restaurant and bar'.
"I find that the defendants did then cause a corporation to be created and this corporation was known as the Harahan Seafood Market, Inc., and this corporation is no more than the alter ego of the defendants and stands in the same relation to the plaintiff as do the two named individuals. The defendants then proceeded to sell seafood at wholesale and retail and that the items sold not only consisted of raw or fresh seafood but also consisted of cooked seafood, and I have named the ones particularlyboiled shrimp, boiled crabs, boiled crawfish, gumbo and stuffed crabs. I find that these same items were sold in the prior business in the same fashion, that is, to customers `to go'. I do not find that the defendants engaged upon selling any of these items to be consumed upon the premises. The sales were limited to articles which had to be taken elsewhere to be consumed and, in the case of the gumbo and stuffed crabs, apparently to be warmed up before being consumed. The problem arises, then, as to whether I should consider that these particular actions are such as come within the agreement or covenant `not to enter into, promote or open * * *'."
The trial judge then applied the principles found in S. & R. Gas Company v. Stephens, 90 So.2d 487, 499-500 (La. App.2d Cir. 1956),[1] wherein the court said:
"Counsel for defendant urges three general principles of law, with all of which we are in complete agreement.
"First: contracts in restraint of trade should be strictly construed; Railway Audit & Inspection Co., Inc., v. Pendleton, 175 La. 4, 142 So. 781; Simmons v. Johnson, La.App., 11 So.2d 710.
"Second: contracts in restraint of trade should not be enforced unless supported by serious consideration, and,
"Third: where there is a dispute over the provisions as to the meaning of contract stipulations the instrument must be interpreted against the party by whom or for whom it was prepared." He held that the restrictive covenant, which was prepared by plaintiff's attorney, "does not apply to the operation of a seafood market which carries with it certain activities in common with the operation of a seafood restaurant as conducted in the general area." He applied the first above-quoted principle, which he held was reinforced by the third, and concluded that a strict interpretation of "seafood restaurant and bar" did not embrace a "seafood market."
We agree that there are certain basic differences in the two business operations, but we think the trial judge was in error in not giving more weight to the fact, which he found, that there were certain items offered for sale in the seafood market which were among the items sold in the seafood restaurant and which contributed to the goodwill of the restaurant. We attach no significance to the fact that the name "seafood market" denotes something different from the name "restaurant and bar." This does not take the operations common to both businesses out of the pertinent part of the restrictive covenant.
The trial judge had more difficulty with the application of the second above-quoted principle. He found correctly that a serious consideration, namely $15,000, had been paid for the goodwill and that, in addition thereto, plaintiff had obligated himself to defendants on the lease for $550 per month for five years, and said:
"* * * It does seem therefore to the Court to be highly questionable to have a stipulation wherein an individual selling a business leases to the purchaser the premises and then proceeds to engage *193 in an operation of his own which is competitive at least in part. Quite frankly, this seems to the Court to permit a situation whereby an individual would be unjustly enriched by virtue of his finding a loophole in order to set about destroying what was obviously a profitable business to his own advantage and to the detriment of the person who bought in good faith; and the Court had serious thought when it considered that the goodwill of the business was sold, as to whether the simple entrance into competition after a sale of goodwill was sufficient to cause the Court to issue an injunction under the covenant. But apparently because of the public policy against restrictive covenants in restraint of trade it would appear that in this case the court should apply the first principle of law, not the theory of destruction of goodwill."
There can be no question that goodwill is an asset and may be the subject of a valid sale. Succession of Conway, 215 La. 819, 41 So.2d 729 (1949); Bergamini v. Bastian, 35 La.Ann. 60 (1883).
In the absence of a covenant not to enter into a competitive business, fair competition of itself will not be restrained. But, when a covenant has been entered into by which the seller of goodwill agrees not to enter into for a specified time and within a restricted area a competitive business, the contract is not against public policy per se, however it will be strictly construed.
In Hirsh v. Miller, 167 So.2d 539, 542 (La.App.1964), we held:
"A reasonable prohibition against competition will be upheld, however, when as alleged by Plaintiffs, it is part of the consideration for the sale of a business and its goodwill; Moorman & Givens v. Parkerson, 131 La. 204, 59 So. 122; Eugene Dietzgen Co. v. Kokosky, 113 La. 449, 37 So. 24, [66 L.R.A. 503]; Hickman v. Branan, La.App., 151 So. 113; 27 Tul.L.Rev. 364."
After remand and trial on the merits, that case came before us on appeal again, and we reversed the trial court and ordered an injunction to issue. See 181 So.2d 310 (La.App.1965.) Writs were granted, and the Supreme Court reversed our judgment and reinstated the judgment of the district court. See 249 La. 489, 187 So.2d 709 (1966). The Supreme Court found that the contract had been violated by the purchaser and the five year restrictive period had expired prior to defendant's entry into a competitive business. The court also considered the factors in that case, which involved a contract of employment, in connection with the public policy expressed in LSA-R.S. 23:921 against restrictive covenants in employment contracts. The statute has no application here. We find nothing in that decision rejecting the principles of law which we applied and which we are following in this case. It would be difficult, if not impossible, to define what is and is not reasonable in such cases. Each case must be determined on its own facts. We hold under the facts of this case the contract was reasonable and a resort to the equitable relief of injunction was proper.
In addition to the facts which we have related above and as correctly found by the trial judge, there is some significant testimony which should be mentioned.
The plaintiff testified that after defendants opened the Harahan Seafood Market his source of supply of crabs was materially affected. A fisherman from whom he bought from 30 to 45 baskets of crabs at a time reduced his supply to 17 or 18 baskets. He was also supplying the defendants. Plaintiff also testified that his gross receipts fell from $6,166.37 for 17 days in January 1966, to $6,437.43 for the full month of January 1967; and from $12,477.93 in February 1966, to $6,628.10 in *194 February 1967. The number of crabs he was able to purchase during these periods was considerably less. This is not of itself proof that defendants had done anything directly or indirectly to destroy the goodwill or to injure plaintiff's business. This could have resulted from plaintiff's poor management or failure to maintain the volume of business. Nevertheless these are factors to be considered in the light of the following testimony.
Plaintiff testified that about Febuary 5, 1966, some question arose about insurance and Mr. Petrossi came over to the restaurant and said that he would not sign any papers because he had sold the business "and that he was going to put me out of business before the time of my lease."
Mrs. Josephine Baird, plaintiff's mother-in-law, testified that she worked in the restaurant in January while Mr. and Mrs. Petrossi were there following the sale and that Mr. Petrossi told several customers: "This is the last good crabs because there will not be any more good crabs."
Mrs. Nacio Bono testified about a conversation which took place between Mrs. Petrossi and a customer in the seafood market. She said Mrs. Petrossi told the customer: [T]hey [meaning the Desselles] would not be there after February 20, that they would have the business, that they would not be there." She further testified that she ordered boiled crabs and Mrs. Petrossi told her they had none because: "[T]hey have an injunction against us. * * * The people that bought the restaurant from us have an injunction against us." Mrs. Bono asked: "Is that the party you were speaking about to the other customer?" She replied: "Yes."
Mrs. Petrossi admitted that they supplied boiled crabs to J & R Seafood and that they recommended to customers that they go there to buy cooked crabs.
The foregoing excerpts from the testimony reflect an attitude of opposition indicative of an intent on the part of Mr. and Mrs. Petrossi to violate the spirit, if not the letter, of their covenant. When all these circumstances are considered together, it becomes apparent that the defendants, by engaging in a competitive business to the extent that they cooked and sold seafood from Harahan Seafood Market, were in violation of the covenant, and if permitted to continue, they will destroy the goodwill which they sold plaintiff for a substantial sum of money.
For these reasons, the judgment appealed from is reversed. The case is remanded to the district court with instructions that the court grant an injunction in favor of plaintiff Elster Paul Desselle, Jr., against the defendants Charles A. Petrossi, Mrs. Charles A. Petrossi, and Harahan Seafood Market, Inc., enjoining, restraining, and prohibiting said defendants, individually and jointly, from entering into, promoting, or operating a seafood business for the sale of cooked seafoods at retail or wholesale in the premises known as Harahan Seafood Market or at any other place within the metropolitan area of New Orleans as defined by said parties for a period of five years from January 11, 1966, at defendants' costs.
The defendants are cast for the costs of this appeal.
Reversed and remanded.
NOTES
[1] Certiorari was granted but before the case could be heard on the merits the principal issue had become moot. The Supreme Court annulled the judgment of the Court of Appeal for that reason. (See 234 La. 13, 99 So.2d 5 (1958).)