147 So.2d 212

**R. R. RICHMOND, Mrs. R. R. Richmond, Individually and as Natural Tutrix of the Minor Virginia Richmond**

v.

**A. KRUSHEVSKI.**

No. 46137.

Dec. 10, 1962.

■■■■■■■■■

■■■■■■■■■■■

———◆———

William J. Daly, New Orleans, for defendant-relator.

Alwynn J. Cronvich, A. J. Wambsgans, Cronvich, Ciaccio, Wambsgans & Perry, Metairil, for plaintiffs-respondents.

HAWTHORNE, Justice.

This court granted a writ in this case to review the judgment of the Court of Appeal, Fourth Circuit, which affirmed an award to plaintiffs of $4500.00 for damages under the penalty provision of an agreement to purchase and sell real estate. This award of damages was made on the theory that the prospective purchaser had breached the contract by failing to make the required deposit of $4500.00.[1]  139 So.2d 290.

The plaintiffs, R. R. Richmond and Mrs. R. R. Richmond individually and as natural tutrix of the minor Virginia Richmond, and the defendant, A. Krushevski, entered into an agreement dated September 5, 1956, in which the plaintiffs agreed to sell and the defendant agreed to purchase certain immovable property in the City of New Orleans for $45,000.00. The pertinent provisions of the offer to purchase, which was accepted by the plaintiffs, read as follows:

"I offer and agree to purchase [certain immovable property] for the sum of Forty-five thousand Dollars * * *

"This sale is conditioned upon the ability of the purchaser to borrow upon this property as security the sum of $30,000 by mortgage loan or loans at a rate of interest not to exceed 5½% per annum * * *

"Should the loan stipulated above be unobtainable by the purchaser, seller or agent within 60 days from date of acceptance, hereof, this contract shall then become null and void and the agent is hereby authorized to return the purchaser's deposit in full. .

"If this offer is accepted, purchaser must deposit with seller's agent immediately in cash 10% of purchase price amounting to $4500.00.

"In the event the purchaser fails to comply with this agreement within the time specified, the seller shall have the right to declare the deposit, ipso facto, forfeited, * * *. or the seller. may demand specific performance."

Thus under these provisions of the agreement a deposit of $4500.00 was required immediately upon completion of the agreement, and the agreement was conditioned upon the ability of the purchaser within 60 days to borrow $30,000.00 upon the property as security.

1. The district court also gave judgment for plaintiffs for $750.00 attorney's fees, but the Court of Appeal set aside this award.

This agreement was entered into on or about August 15, 1956, but for reasons apparently to the interest of all parties it was postdated to September 5, on which date the deposit of $4500.00 was to be made. In the interim the defendant Krushevski, who was anxious to acquire the property, made inquiries at several homesteads, a bank, and two insurance companies concerning the possibility of getting the loan, but none of these agencies would lend him $30,000.00 with the property as security. The defendant Krushevski did not make the deposit on September 5 as required by the contract. He evidently still desired to purchase the property, however, and in a last effort to complete the sale according to the agreement to purchase, he, accompanied by the plaintiff Richmond, in the latter part of September sought a loan from still another homestead association. This homestead association would not agree to a loan of $30,-000.00 with the property to be purchased as the only security. Under these facts we are in full accord with the Court of Appeal's conclusion: "We are satisfied that the loan as contemplated by the contract was unobtainable without further security." On November 14, after the time had expired for the defendant to obtain the loan, the plaintiffs instituted this suit to recover damages from defendant under the terms of the agreement for the defendant's alleged active breach of the obligation by failing to make the required deposit.[2]

Defendant's obligation to purchase the property ceased when the loan could not be obtained, and plaintiffs through counsel agreed in argument before this court that had the defendant put up the deposit as required by the contract, they would have had no choice but to return it when the loan was not obtainable. They nevertheless contend that the failure to make the deposit was such a breach of the agreement that they are entitled to the damages specified as the penalty for failure to comply with the agreement. The extraordinary conclusion from the argument is that since the defendant did not make the deposit so that they could return it to him, they are entitled to a judgment against him for the amount of the deposit.

The plaintiffs' contention is expressly refuted by the provisions of our Civil Code. Under the Code, when the principal obligation is null the penal obligation is also null, its existence is dependent upon the principal obligation, and it has no existence apart from the principal obligation.

Book III, Title IV, Chapter 4, Section 8, of our Civil Code contains the rules relative to penal clauses in obligations, as follows:

"Art. 2117. A penal clause is a secondary obligation, entered into for the purpose of

2. In December the plaintiffs found another purchaser for the property.

enforcing the performance of a primary obligation."

"Art. 2118. A penal obligation necessarily supposes two distinct contracts, one to do or to give that which is the principal object of the contract, the other to give or do something, if the principal object of the agreement be not carried into effect."

"Art. 2125. The penal clause is the compensation for the damages which the creditor sustains by the nonexecution of the principal obligation.

\* \* \* \* \* \*

"Art. 2123. The nullity of the principal obligation involves that of the penal clause.

"The nullity of the latter does not involve that of the principal obligation."

■ Under the principle expressed in the last article quoted, when the principal obligation here became null and void, the secondary obligation for penalty for failure to perform the principal obligation likewise became null and void. According to the terms of the agreement in this case the principal obligation to purchase the property became null and void and ceased to exist when the loan could not be obtained in the time specified, and under the principle above set out, the secondary penal clause likewise became null and void and ceased to exist, and is unenforceable in this action.

Enforcement of a penal clause when the primary obligation is unenforceable has never been considered a possibility under the Civil Law. Saunders in his Lectures on the Civil Code of Louisiana (Bonomo's ed. 1925) at p. 432 says: " \* \* \* as a matter of course, if the principal obligation is null the penalty is null."

This necessary principle has always been recognized in the Civil Law. Pothier announces it as the "first principle" in the nature of penal obligations and explains fully the reason for it:

"A penal obligation being in its nature accessory to a primary and principal obligation, the nullity of such principal obligation necessarily induces the nullity of the other; the reason is, that it is the nature of every accessory that it cannot subsist without its principal. Besides, the penal obligation being the obligation of a penalty stipulated, in case of the non-performance of the primary obligation, if the primary obligation is not valid, the penal obligation cannot take place, as there can be no penalty for the non-performance of an obligation, which not being valid, neither could nor ought to be executed." 1 Pothier, A Treatise on the Law of Obligations (Evans' tr. 3rd ed. 1853), no 338, p. 279.

The French Civil Code in Article 1227 contains the same provision in identical language as our Article 2123. Of this Planiol says:

"The Code says, moreover, that if the principal obligation is null, the penalty

clause is equally null, as a consequence thereof (Art. 1227). That would follow of itself: * * *" Planiol, Traité élémentaire de droit civil, Vol. 2, Pt. 1, 11th ed. 1939 (Louisiana State Law Institute tr.), § 254, p. 153.

Furthermore, it was not within the contemplation of the parties themselves when they contracted that the penal clause related of pertained to the deposit requirement. The language of the contract shows definitely that the penalty provision was intended to compel the performance of the principal obligation, which was to purchase the property. The penalty provision was made without regard to the deposit requirement, for the deposit was mandatory and the parties were contracting under the assumption that it would be made since it had to be made. Thus the agreement does not provide for a penalty for failing to make the required deposit.

The Court of Appeal considered that its recent decision in the case of Bayon v. Pettingill (La.App.), 77 So.2d 202, was controlling here. That decision does appear to be authority for the proposition that failure to make the deposit, of itself, is a breach which gives the right to enforcement of the penal clause, and the court in that case was of the opinion that that result was indicated by the decision of this court in Samuelson v. Bosk, 219 La. 477, 53 So. 2d 239. In the Bayon case the Court of Ap-

peal specifically stated: "In Samuelson v. Bosk * * * the Supreme Court had occasion to pass on a case involving practically the same issue." As we view the matter, however, Samuelson v. Bosk did not involve practically the same issue as the Bayon case. In the Samuelson case the principal obligation was not conditioned upon the ability of the prospective purchaser to obtain a loan, and that case did not involve an agreement which became null because of failure of a condition. For this reason what was said in the Samuelson case was not decisive of, or applicable to, the issue in the Bayon case. This court never contemplated that its language in the Samuelson case, entirely appropriate under the circumstances there, would be used and extended to another problem so as to produce the untenable result of keeping in effect and enforcing a secondary penalty clause when the primary obligation no longer existed.

Although the Court of Appeal was not correct in basing its decision in the Bayon case on our decision in the Samuelson case, nevertheless that court had some justification for relying on its decision in the Bayon case in its disposition of the instant case since we refused an application for a review of the Bayon case. The Bayon opinion shows that a much weaker case was presented there on the facts relating to whether the loan was obtainable, but in order to correct an erroneous legal principle we probably would have granted a review

of the case had the applicant there called to our attention the principle of law upon which we rest the present decision.

For the reasons assigned the judgment of the Court of Appeal affirming the district court's award of $4500.00 to the plaintiffs is annulled and set aside, and plaintiffs' suit is dismissed at their costs.

147 So.2d 390