REGAN, Judge.
Plaintiff, Elizabeth DeGrange Winston, a prospective purchaser, instituted this suit against the defendants, Mrs. Vergie San-doz, the owner, and J. Wallace Fassman, the realtor, endeavoring to cancel an agreement to purchase property located in the City of New Orleans and to compel the defendants to return $600.00 which she had deposited after signing' the agreement. Plaintiff, in explanation thereof, asserted that the realtor obtained her signature on an incompleted offer to purchase and then inserted terms of financing therein to which she had not consented. Her suit for re-cission was also predicated on her inability to obtain financing, upon which the sale was'contingent, and the realtor’s failure to disclose the fact that Mrs. Sandoz’s minor son was a co-owner of the property.
The defendant realtor answered,[1] admitting that he received the sum of $600.-72 from the plaintiff, but he denied that she was entitled to a refund thereof. His defense is based upon the failure of plaintiff to deposit the cash required by the terms of the agreement. Defendant then reconvened in an effort to recover $690.00 from the plaintiff, representing six percent of the purchase price of $11,500.00, or the commission for which he insists plaintiff is liable for breaching the contract.
The defendant owner pleaded the exceptions of no cause of action and prematurity, which were overruled. She then answered and denied that the plaintiff was entitled to a refund, reconvened for liquidated damages for breach of contract by the plaintiff, and, alternatively, instituted a third party action against her co-defendant in the event she was cast in judgment. It is unnecessary to further discuss the ramifications of the owner’s pleadings since she was not cast in judgment and is not a party to this appeal.[2]
From a judgment in favor of the plaintiff ordering the defendant realtor to refund her deposit of $600.72, the defendant realtor has prosecuted this appeal.
The pertinent parts of the Agreement to Purchase read:
“I offer and agree to purchase the property located at 8722 Oleander Street in City of New Orleans, La. * * * for the sum of Eleven Thousand Five Hundred Dollars ($11,500.-00) on the terms of $3000.00 Cash balance $8500.00 on mortgage.
“This sale is conditioned upon the ability of the purchaser to borrow upon this property as security the sum of $8500.00 by mortgage loan or loans at a rate of interest not to exceed 6Y2% per annum, interest and principal payable in equal monthly installments, over a period of fifteen years.
“Should the loan stipulated above be unobtainable by the purchaser, seller or agent within 90 days from date of acceptance hereof, this contract shall then become null and void, and the agent is hereby authorized to return the purchaser’s deposit in full.
“Act of Sale to be passed * * * on or prior to Dec. 20th, 1959 at expense of purchaser.
“If this offer is accepted, purchaser must deposit with seller’s agent immediately in cash 10% of purchase price amounting to $1,150.00.”
The offer, dated October 30, 1959, was accepted by the seller on November 1, 1959. Although the contract required the *276 purchaser to deposit $1,150.00 cash upon the acceptance thereof, the vendor and the realtor agreed to accept partial payments thereon, provided that the entire amount of the deposit was paid when the act of sale was passed. In any event, the plaintiff made the following payments:
November 8, 1959 $ 65.00
November 14, 1959 450.72
November 27, 1959 85.00
$600.72
The record reveals that it was necessary for the plaintiff to borrow money for both the cash and credit portions of the sale price. Although she stated she was led to believe that $1,150.00 cash was all that was needed to purchase the property, which would indicate she needed a mortgage loan in the amount of $10,350.00, nonetheless, she applied to two homesteads for an $8,500.00 loan. We can only surmise that both hSmesteads processed her application on the basis of lending $8,-500.00 because she turned over the written agreement to purchase together with her application to the homesteads, and the document recited that plaintiff would pay $3,000.00 in cash at the act of sale.
In any event, her attempts to borrow $8,500.00 secured by mortgage met with no success. On December 9, 1959, the Equitable Mutual Plomestead Association addressed a letter to plaintiff in which they rejected her application for an $8,500.00 loan because it exceeded 70% of the purchase price.
On December 14, 1959, the defendant realtor addressed a letter to the plaintiff inquiring about the balance of the cash deposit and the status of the sale. He requested that she reply within a period of five days, advising that both he and the seller wished to afford her every opportunity to perform before placing her in default.
Although the act of sale was scheduled for' passage on December 20, 1959, there is no evidence that the title was tendered and, two days later, plaintiff was informed by the Jackson Homestead Association that it could not consider her loan application because its agents had been unsuccessful in obtaining an appraisal of the property.
Mrs. Sandoz, the owner, testified that she made no effort to secure an $8,500.00 mortgage loan for the plaintiff since she was assured by the realtor that he could arrange the financing thereof.
The trial judge, in his interrogation of the realtor, asked him if he had attempted to procure an $8,500.00 mortgage loan for the plaintiff, and he replied that this appeared to be a useless gesture since the plaintiff never tendered the full amount of the deposit.
Predicated on the foregoing evidence, the trial court reasoned that the contract was null and void since the mortgage loan was unobtainable, and ordered the realtor to return plaintiff’s deposit.
Defendant contends that the trial court erred in invoking the contingent loan clause to cancel the contract because the plaintiff never made a bona fide effort to obtain a loan. Counsel also asserts that the 90 day period for obtaining a loan should not begin to run until the deposit was fully paid, since the plaintiff’s failure to make the deposit, of itself, constituted a breach of the contract.
We find no merit in defendant’s contentions. Although the agreement required the plaintiff to deposit $1,150.00 upon the seller’s acceptance thereof, it is conceded by the litigants that both the vendor and the realtor waived the deposit requirement and acquiesced in accepting installment payments thereon.
It will be recalled that while the plaintiff was endeavoring to raise money for the full amount of the deposit, she simultaneously applied to at least two institutions for a mortgage loan of $8,500.00 which they rejected for the reasons set *277 forth hereinabove. When the plaintiff received the letter from Equitable Mutual Homestead Association, dated December 9, 1959, which we are convinced evidences a bona fide effort by her to procure financing, she was relieved from her obligations ■under the agreement, since performance thereof was contingent upon obtaining an adequate loan.[3]
When tlie loan application was rejected, both the owner and realtor were obviously willing to extend additional time to plaintiff to raise the deposit; therefore, their waiver relieved her from liability for default in relation to the deposit provision ■of the contract.
It should be emphasized that under the ■provisions of the agreement to purchase, hoth the realtor and the vendor possessed the right to arrange financing for the plaintiff. The vendor readily admitted that she made no effort in connection therewith. In oral argument before us, counsel for the defendant insisted that the realtor ■made no attempt to secure a mortgage loan because he was not informed that the plaintiff's application or applications therefor Rad been rejected.
While the record is. not entirely clear .as to whether the realtor was fully aware <of the lending associations’ rejections, the inference is obvious that the realtor knew ■of this fact and simply neglected to make any effort to arrange financing because the ■deposit had never been fully tendered. When the trial judge asked him whether he .exerted any effort to obtain an $8,500.-¡00 mortgage loan, he replied:
“No, sir — the reason because since Mrs. Winston didn’t come up with the deposit of eleven hundred fifty dollars, it is premature as to a loan for this reason. * * * ”
We, therefore, conclude that the realtor’s •demand letter of December 14, 1959, for rthe balance of the deposit occurred at a time when the plaintiff was relieved of her obligation under the contract because she had failed, despite bona fide attempts, to procure the financing, upon which performance was contingent.
Finally, the contract clearly provides that no real estate commission is due if financing thereof cannot be arranged; therefore, the trial court very properly ordered the realtor to return to the plaintiff her partial deposit amounting to the sum of $600.72.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.

. This answer incorporated a defense for Mrs. Sandoz also; however, she later employed her own attorney and the answer, insofar as it affected Mrs. Sandoz, was withdrawn.

. After Mrs. Sandoz obtained an attorney, he filed an answer, a reconventional demand and a third party complaint on her behalf, but he formally withdrew as counsel of record before this matter came to trial.

. Richmond v. Krushevski, 243 La. 777, 147 So.2d 212.