REDMANN, Judge
(dissenting in part).
I concur in that part of our judgment which reversed the lower court’s award of attorney’s fees to Aubert. If I could agree with the balance I would still have to dissent from allowing $400 (or even $200) attorney’s fee on $690 commission, when the commission contract stipulates 25%, or $172.50.
But I disagree with the balance of our judgment. I hereafter explain why I believe that there never was a buy-sell contract, that the trial judge’s reasons for judgment show it was founded on legal error, and that there never was an extension agreement. I also indicate my recently aroused suspicion that our own judgment is null.

Absence of Buy-Sell Contract

Printed forms were used in the original transaction. They are titled “Agreement to Purchase”. The form begins “_ offer and agree to purchase” (the alternative “sell” was stricken), the intended usage being completion with “I” or “We”, or perhaps the name of the offeror.
But instead this form was completed to read “I authorise you to offer and agree to purchase”, and Bourg signed it as thus completed. No one else — no one — signed the form Bourg signed to accept it, although it contained below Bourg’s signature a printed “acceptance”, reading “I/We accept the above in all its terms and conditions.”
Instead, the agent presented a carbon copy of this filled-in form, including “I *108 authorise you to offer and agree to purchase”, to the owner, Aubert. This carbon copy, at the line for the offeror’s signature, was filled in “Original signed by Purchaser, Vincent J. Trapani, Realtor”. Aubert (the owner) signed the carbon on the signature line following the printed “acceptance” quoted above. (I pretermit rudimentary contract-law observations about the fact the carbon copy acceptance, if such, was altered to show a later lease-expiration date than that contained in the offer. See C.C. art. 1805.)
There may have been no contract with Bourg at all. But if there was a contract, its very terms merely authorized Aubert to offer to purchase. Because Aubert (and the real estate agents) seek to enforce a penalty clause, which is in law disfavored and must be strictly construed, I believe we are obliged to construe the contract (if any) as written, i. e., as a mandate, which was of course not breached by Bourg and thus no penalty is due.

Trial Court Reasons

Apparently the trial court considered the question whether an extension had been mutually agreed upon immaterial, because of the circumstance that Bourg had never made a $2,300 deposit which the contract (if a buy-sell contract) called for. The court reasoned :
“The proposed sale was conditioned upon the purchaser obtaining a $20,000 loan on said property. Subsequently he authorized the mortgaging of another piece of property as additional security since the subject property did not warrant a $20,000 loan. He [i. e., of course, “the purchaser”] also extended the date for passage of the sale to July 15, 1965. He was formally placed in default for not appearing at the act of sale and this litigation ensued.
“The court is of the opinion that the defenses urged by defendant are not meritorious. His failure to place a deposit would have given plaintiff the right to avoid liability under the contract but it was never intended that defendant’s breach could be used by him to his advantage. The court does not believe that Mr. Aubert was ever advised by his agents that a deposit had not been made. In view of the decisions in Bayon v. Pettingill, 77 So.2d 202 [La. App.1955, cert. denied], and Castellon v. Pate, 204 So.2d 662 [La.App.1967], it appears that defendant is liable for all claims herein and as set forth in the judgments herein.” [Bracketed matter supplied.]
It may be observed that, in fact, the trial judge did not conclude that Aubert, the owner, signed any extension agreement. He only stated that Bourg, the purchaser, had extended the date, and this statement was made in reasoning that Bourg had waived the $20,000 loan condition. A man who is insisting on a loan condition which cannot be met does not thereafter agree to an extension.
The sole authority cited for imposing the penalties related to the breach in merely failing to make the deposit. Yet that reasoning of Bayon was expressly disapproved by our supreme court in Richmond v. Krushevski, 243 La. 777, 147 So.2d 212 (1962), which held that only actual, proven damages (there $0) are recoverable for breach of the obligation to deposit. Castel-lon’s dicta, although later than Richmond, is equally wrong because directly contrary to the supreme court’s holding.
Accordingly the trial judge’s reasons do not support his judgment.

Absence of Extension

I have above pointed out that the trial judge did not find, as a matter of fact, that the owner had signed an extension agreement (although our majority does).
I conclude that, as a matter of law, what is claimed to be the seller’s extension agreement on the back of the alleged contract *109 (the carbon copy) is not, and on its face does not even purport to be, any extension agreement signed by the seller. Perhaps this “agreement” must be seen to be disbelieved. A photocopy follows, but is preceded by a photocopy of the signature of Aubert on the face of the alleged contract (so that the signatures may be compared — note the “L” and “r”, for example) :

I find it difficult to suppose both signatures are Aubert’s.
Assuming both signatures photocopied are Aubert’s, it is still unreasonable to say that an extension agreement is proved by the signature at the very top of a page, with words of agreement typed under it and empty signature lines under those words of agreement.
(I also pretermit comment on “July” being typed in different type over an erased “June” still discernible in the original. The contract had been extended to June 15 because of a title problem.)
I daresay that Bourg would have been laughed out of court if he were trying to enforce that “agreement” against Aubert. As a matter of the law of mutuality of obligations, Aubert should likewise be treated.
Bourg admitted he signed, on the face of the document, the notation “extended to July 15, 1965.” There is no explanation of why Aubert did not sign (as I believe one would normally do) at the same location on the document. Nor is there any attempt at explanation of why Aubert’s alleged signature on the reverse was above rather than below the words of agreement. To the contrary, the only testimony was from Aubert, who testified he did not know whether or not the typewritten words were on the reverse of the document when he signed l (He also did not know when he did sign.)
Bourg’s expressed willingness to extend could not become binding on him unless Aubert also agreed, in writing (C.C. art. 2275). It takes two to contract, C.C. art. 1798. Aubert never signed any extension agreement, and an extension “agreement” signed by Bourg alone is not enforceable. Not against Aubert, not against Bourg.

*110
Nullity of Judgment

Our attention (and that of the trial judge) was never directed to the dissimilarity of the purported Aubert signatures. In preparing my dissent (subsequent to the majority opinion and judgment) I noted this matter. Impressed by the naked eye’s inclination to conclude the two signatures are not by the same hand, I believe it my duty to point out the possibility our judgment may be null, C.C.P. art. 2004.
If I had noted this issue when this case was still under advisement, I would alternatively have urged remand. Now, only an action of nullity, C.C.P. art. 2004, can squarely present this issue. The district court has, it hardly need be said, jurisdiction to nullify our judgment or even a supreme court judgment; Tracy v. Dufrene, 240 La. 232, 121 So.2d 843 (1960). And today, the false evidence alleged as grounds of nullity need not have been participated in by a party; see comment (c) to C.C.P. art. 2004. Thus even the judgment in favor of a real estate agent who may have been ignorant of the extension signature not being Aubert’s (if that is a fact) is equally subject to the action of nullity.