356 So.2d 1133 (1978)
LAKE FOREST, INC.
v.
BON MARCHE HOMES, INC.
BON MARCHE HOMES, INC.
v.
LAKE FOREST, INC.
Nos. 8175, 8176.
Court of Appeal of Louisiana, Fourth Circuit.
March 3, 1978.
Rehearing Denied April 11, 1978.
*1134 Nathan T. Gisclair, Jr., Montgomery, Barnett, Brown & Read, New Orleans, for Lake Forest, Inc.
Gerard H. Schreiber, New Orleans, for Bon Marche Homes, Inc.
Before REDMANN, STOULIG and GARSAUD, JJ.
*1135 REDMANN, Judge.
Defendant[1] Bon Marche Homes, Inc. appeals from a judgment forfeiting its $39,334.50 deposit (half cash, half promissory note) because of its failure to perform its agreement to purchase 46 lots from plaintiff Lake Forest, Inc. The basic question is whether Lake Forest's title to the lots was merchantable at the time of Bon Marche's default. A second question is whether unmerchantability discovered after default prevents the forfeiture.
Defendant alleges three title defects as establishing unmerchantability (and unmerchantability of any one lot's title defeats the entire agreement; Succession of Fay, 1926, 161 La. 1022, 109 So. 824). Our conclusion as to one alleged defect makes discussion of the others unnecessary.
The day before trial of this lawsuit the heirs of an alleged squatter brought an action (Bonomo v. Lake Forest, La.App., 346 So.2d 358) claiming title to part of the property by acquisitive prescription. Because of plaintiff's objection, the trial court, presumably for lack of "reasonable notice", C.C.P. 1155, refused defendant's amended answer filed the day of trial alleging the action by the squatter's heirs. Yet the existence of circumstances justifying good-faith litigation claiming title in a squatter makes a record title unmerchantable; Young v. Stevens, 1968, 252 La. 69, 209 So.2d 25. We conclude that the circumstance that the squatter's action was not filed until the day before trial of this action would have justified the trial judge's overruling of plaintiff's objection to the amended answer. Reasonable notice within C.C.P. 1155 allows filing at the beginning of trial (although "upon such terms as are just") when the matter alleged has just occurred or been discovered the day before trial and could be determinative of the outcome of the lawsuit.
We postulate that a vendor's suit for specific performance of a buy-sell agreement would fail if the defaulting purchaser presented testimony at trial of a squatter's having lived on part of the property and claiming it by the acquisitive prescription of 30 years as of the time of default, especially when that squatter or his heir have by trial time instituted litigation; and that it is immaterial that the purchaser did not know of the squatter at the time of the default. The vendor's obligation to deliver merchantable title is a continuing one; the vendor could not obtain specific performance on the theory that merchantability as of the time of default is the only test, and that ignorance of fact made the title merchantable at that time.
We similarly reason that such a vendor's demand to forfeit the purchaser's deposit would fail because the title tendered at the act of sale is not shown to have been then merchantable, although the purchaser did not then know of the squatter and the squatter's heirs' lawsuit had not then been brought.
Our vendor was not obliged to keep title in itself to sue for the deposit. Having elected to sue for the deposit rather than for specific performance, it could dispose of the property prior to suit for the deposit. But it must show that it was able to deliver merchantable title when the agreement called for it. It now appears, from the disallowed supplemental answer, that the then existent (if then unknown) claim of a squatter made the vendor's title subject then to litigation (which has since been instituted). The vendor's title was therefore not shown to have been merchantable at the time the contract required delivery of merchantable title.
The contractual provision for forfeiture of the deposit is a penal clause within C.C. 2117, "a secondary obligation, entered into for the purpose of enforcing the performance of a primary obligation." Richmond v. Krushevski, 1962, 243 La. 777, 147 So.2d 212. The primary obligation of the purchaser was to purchase. But this primary obligation was conditioned upon the *1136 vendor's title's being merchantable and therefore it apparently falls, and the secondary obligation or penal clause falls with it. Richmond, supra. "The penalty being stipulated merely to enforce the performance of the principal obligation, it is not incurred, although the principal obligation be not performed, if there be a lawful excuse for its non-performance . . . ." C.C. 2120. "The nullity of the principal obligation involves that of the penal clause." C.C. 2123.
Because the amended answer was excluded, the squatter's heirs' action was not introduced into evidence and there was no evidence by plaintiff questioning the good faith of that action (a question plaintiff hints at by noting defendant learned of the action and alleged it in a supplemental answer within a day of its filing). We remand for the purpose of determining whether the alleged previous presence of the squatter and his heirs' subsequent action claiming title based on that presence made plaintiff's title unmerchantable at the time set for the act of sale, in the light of the circumstances then existent as known at the time of trial. Unless plaintiff establishes that its title was merchantable, it is not entitled to forfeiture of the deposit.
Set aside; remanded; costs to await final outcome.
NOTES
[1] Bon Marche is plaintiff in the consolidated case, in which it demanded return of its deposit. The two cases are mirror images of each other; the allegations of petition or supplemental petition in one become those of an answer or supplemental answer in the other.