THOMPSON, J.
August 3, 1912, the Nicholson Publishing Company Limited, sold to the E. S. Upton Printing Company the entire equipment of the Picayune Job Shop, as then constituted, situated at Nos. 326 and 330 Camp street, this city, together with the good will of said shop. The consideration of the sale was $5,000, for which amount the purchaser executed its promissory note, payable to its own order and indorsed in blank and due and payable two years after date, with *273 6 per cent, per annum interest. A written contract of sale was-entered into and contained the following stipulation with reference to the payment of the note:
“It is further understood and agreed between the parties hereto that the promissory note herein furnished shall be paid by work to be hereafter done by the E. S. Upton Printing Company for the Nicholson Publishing Company, it being the intention of the parties that the E. S. Upton Printing Company shall do printing work for the Nicholson Publishing Company to an amount not exceeding $200 a month, which shall be charged for at reasonable current prices and that the price of such work shall be credited upon the note herein furnished.
“If, at the expiration of two years, the work done for the Nicholson Publishing Company has not amounted to $5,000, the purchase price .herein stated, the said note shall be extended until such time as the full amount of $5,000 in work, as above provided, has been received by the Nicholson Publishing Company.”
In December, 1912, and at different times during 1913, the Nicholson Publishing Company loaned or advanced to the defendant cash to the amount of $1,000, which was charged to defendant. The defendant was also charged with $236.20 for a Lino Composition. For the two years immediately following the date of the note and contract of sale, the work performed by the defendant amounted to $3,965.52, being less than an average of $200 per month as stipulated in the contract.
On April 4, 1914, in accordance with the terms of the charter, the stockholders of the Nicholson Publishing Company voted to liquidate the affairs of the company, and selected Thomas G. Rapier, Leonard K. Nicholson, and Harry McEnery as liquidators. The selection of these gentlemen was confirmed by judgment of court April 7,-1914. It appears that no printing was offered to, or required of, the defendant after April 4, 1914, the date the company went into liquidation, until August 16, 1916, on which latter date the liquidators tendered certain job work, consisting of 500 envelopes, 500 letter heads, 500 rent notes, and 500 forms of lease contract to be printed for the George Nicholson Realty Company, and demanded that the work be performed by the defendant in accordance with the contract of August 3, 1912. In the letter transmitting the work, -the plaintiff said:
“We will wait on you for a definite reply no later than Saturday morning, August 19th. Consequently, kindly consider this a putting in default under the contract aforesaid.”
In reply to the above letter the defendant said, in part:
“We desire to state that we have never refused to carry out this contract, but on the contrary have always stood ready to do everything that we were called upon to do under such contract, and do' now stand ready to carry out the terms and conditions of this contract implicitly.”
The liquidators, considering the defendant’s letter evasive, again wrote defendant in part as follows:
“We again refer to our said letter of August 16th and wish that you advise us definitely, yes or no, by Saturday noon, whether or not you intend to do the work called for in our letter of August 16th. If a favorable reply to the effect that you will do the work called for in our letter .of August 16th is not received by one o’clock August 19th we will conclude that you refuse to do it and will consequently exercise our rights under the contract.”
Defendant replied to the above letter (we quote only the relevant part) as follows:
“We are very sorry indeed that our letter * * * was evasive, because it has been and is now, our desire to make our position perfectly plain in this matter and desire now to state that if these various articles of printing matter which you refer to' are for the account of the Nicholson Publishing Company, of course, under our contract, it will be our desire to go ahead with the work and rush it out to completion. If, however, this printing matter is not for the account of the Nicholson Publishing Company, but for the account of the George Nicholson Realty Company (as the heading on the copy you submit would denote) *275 and this work has been turned over to you by tkemf then we take it, under our purchase of the good will of the Nicholson Publishing Company, we are entitled to this business, and of the payment of our bill for same, by the George Nicholson Realty Company.”
No further correspondence passed between the parties and no further demand was made on the defendant until this suit was filed February 27, 1917. The suit is for the amount of the note and interest: For the cash advanced and for the Lino Composition, less the credits due the defendant, the net balance claimed as of date January 31, 1917, being $3,035.95.
The theory on which a money judgment is claimed is that the defendant, having refused to do any further work under the contract, thereby breached the said contract and is liable for the unpaid balance due on the note.
Defendant denied owing the plaintiff any sum whatever and denied that any money was loaned or advanced to it by the plaintiff. Defendant admits receiving the $1,000 cash, but alleges that the said sum was in payment for printing work done for plaintiff each month over and above the amount of $200. It is denied that the defendant has refused to do any work under the said contract for the Nicholson Publishing Company, and it is denied that said company has at any time tendered it the work of said company, which it has refused to print. It is admitted that the plaintiff tendered certain work for the George Nicholson Realty Company which defendant refused to print.
It is further alleged that the principal cause and consideration of the contract of purchase of the job printing was the purchase and transfer to it (defendant) of the good will and business of the Picayune Job Shop and the upbuilding and advancement of defendant’s business thereby; it being understood and contemplated that the Nicholson Publishing Company should continue in existence and should turn over to defendant all of its job work; that in violation of said contract, said Nicholson Publishing Company shortly thereafter went into liquidation, terminated its business, and destroyed the good will thereof, which it had previously undertaken to sell and transfer to defendant; that said Nicholson Publishing Company and the liquidators thereof further violated the said contract by giving a large portion of their work to other printers and printing establishments; and that if said company had complied with its contract in this particular, defendant would have long since done sufficient work to more than cover the amount of the note.
It is alleged further that defendant has already long since done work for Nicholson-Publishing Company much more than enough to cover the actual value and price of the old equipment and material turned over to it under the contract, and' that defendant, in law, or in equity, owes to said Nicholson Publishing Company, or to the liquidators thereof, nothing on account of said contract, or the note, nor on any other account. There was judgment for plaintiff in the full amount claimed, and defendant appeals.
Opinion.
There is no doubt of the correctness of the amount due plaintiff on January 31, 1917, as shown by the statement attached to the petition. Several witnesses for the plaintiff testified to the correctness of the statement. But aside from this, the note speaks for itself, and the defendant admits receiving the $1,000 cash charged on the statement, and there is no claim that more printing work was done than the amount for which defendant was given credit on the statement. The plaintiff kept an account with defendant on which was charged the cash advanced from time to time, and the defendant was given credit on the account *277 for work performed under the contract, as the statements for such work were rendered to the plaintiff. These credits, or payments, as they were made, went to the discharge of the cash debits on the account. Statements showing the debits and credits were regularly rendered to the defendant, and no objection was ever made to the charges of cash, nor as to the application of the amount due for .work to the payment of the items of cash. The acquiescence and silence of defendant for more than three years precludes it from questioning the imputation. The claim of defendant that the cash advanced by the plaintiff was for work performed over and above the $200 per month is not borne out by the evidence. But even if that were a fact, it would make no difference in the balance that would be due plaintiff on the note. The credits given defendant for work would have to be reduced to the extent of the cash advanced, for, as previously noted, no other work was performed by defendant than the amount for which it was given credit. So that, if defendant’s contention be accepted, the balance due the plaintiff would be as shown by the statement. The contention, however, effectually disposes of defendant’s plea of prescription levelled at the cash items on the account.
We are not quite able to appreciate the force of the contention that by going into liquidation the Nicholson Publishing Company breached the contract and thereby discharged the defendant, or rendered it impossible for defendant to perform its part of the contract. That is a method, of discharging obligations which we have not found to be sanctioned by any statute law or jurisprudence. It is urged, however, that in going into liquidation the publishing company destroyed the good will which was a part, if not the prime consideration, of the purchase of the job shop. The good will mentioned in the contract was that of the “job. shop.” The good will of the Nicholson Publishing Company was not conveyed, nor even referred to. “Good will” is said to be the favor which the management of a business wins from the public and the probability that old customers will continue their patronage and resort to the old place. Yonder-bank v. Schmidt, 44 La. Ann. 264, 10 South. 616, 15 L. R. A. 462, 32 Am. St. Rep. 336.
It is not exclusively to the person, therefore, that what is termed the “good will” of an establishment is attached, but it is chiefly to the place of business. In the absence of any express stipulation to the contrary in the contract, the Nicholson Publishing Company would not have been precluded from setting up the same kind of business and in the same neighborhood of that of the “Picayune Job Shop” sold to defendant. Bergamini v. Bastian, 35 La. Ann. 60, 48 Am. Rep. 216. This being true, we cannot conceive how ceasing to do that character of business or the going into liquidation by defendant’s vendor can have the effect of avoiding the contract, or of relieving defendant from its obligation of performance. The publishing company was under no contractual obligation to continue in business, nor to furnish defendant with printing work amounting to $200 or more per month; nor was said publishing company bound under the contract not to give any of its job work to other printers, or establishments. The stipulation for the payment of the note in work instead of money was obviously in the interest of the defendant, and so long as the publishing company offered no work to be performed by the defendant, the payment of the note was extended and could not be judicially enforced.
Our conclusion is that the fact that the publishing company did not give all of its printing to the defendant, and the fact that the company deemed it advisable or expedient to liquidate its affairs, was not a viola *279 tion of the “good will” stipulation of the contract and afforded the defendant no legal excuse for not performing its part, of the contract when called upon to do so. Nor is it any defense to say that the good will formed the principal consideration for the purchase by defendant of the job printing outfit, or that the work performed by defendant more than offset the real value of the material.' There was no separate price placed on either the material or the_good will. The thing sold was the “Picayune Job Shop,” “together with the good will of the shop,” and the price stated was $5,000. The defense is clearly an afterthought. When called on to perform the work and to carry out the contract in August 1916, the defendant did not then claim that plaintiff had violated its contract by going into liquidation and by giving work to which defendant was entitled, to other printers. Nor was any claim made that the work already done by defendant was sufficient to more than cover the value of the material of the job shop. The only claim, then made, was that the printing offered was not for the plaintiff, but was such as defendant was entitled to be paid for under the “good will” clause of the contract. In its letters to the plaintiff, the defendant distinctly recognized that the contract was still in force and that plaintiff had the right to have printing done, which would fall under the terms of the contract as construed by defendant. The defendant then expressly stated and reiterated the desire, readiness, and willingness to carry out the contract literally, to use the defendant’s own words, “and do now stand ready to carry out the terms and conditions of this contract, implicitly.”
This brings us to consider the real reason offered by the defendant for refusing to carry out its contract, and that is that the work to be done under the contract was to be strictly the work of the Nicholson Publishing Company and not outside work that that company might control. The contract provides:
“The note herein furnished shall he paid by work to be hereafter done by E. S. Upton Printing Company for the Nicholson Publishing Company, it being the intention of the parties that the E. S. Upton Printing Company shall do printing work for the Nicholson Publishing Company to an amount not exceeding $200 a month.”
This language, we think, is not susceptible of the limited constructin' contended for by the defendant. If it had been the intention of the defendant to restrict the printing to such work as was^personal to the Nicholson Publishing Company, the defendant should have had it so expressed in the contract. The defendant was the obligor, and the manner of discharging the obligation was exclusively for its benefit. It may be reasonably assumed that-the Nichols'on Publishing Company would have preferred to have the note paid in money. As the defendant’s vendor and holder of the obligation was not prohibited under the contract from receiving job printing work from outsiders, it had the right to require the defendant to do all that character of printing it saw fit to give it, not exceeding $200 per month. This was the construction placed on the contract by the defendant before this controversy arose. The twelve exhibits in the record represent work performed by the defendant under the contract and which, as admitted by Mr. Upton, was not the personal printing work of the Nicholson Publishing Company, but work brought to the Nicholson Publishing Com-' pany by other people.
The defendant gave its unconditional obligation in favor of the plaintiff for the price of the job shop, with the privilege of paying the obligation in work. The obligation has not been fully discharged and defendant, after demand refused to do further work, though retaining the property. Un *281 der the circumstances, there was no other alternative but for the plaintiff to demand the execution of the contract or the payment of the balance due on the note. Our search has not enabled us to find any adjudicated case bearing on the particular question in our jurisprudence, but certainly equity and fair dealing will not permit the defendant to hold the property, which is unpaid for and is subject to the vendor’s privilege without paying the balance of the price, either in work under the contract or in money. A citation from Cyc., vol. 8, p. 212, in plaintiff’s brief, has a direct bearing on the question:
“Where the stipulation in a note as to the manner of payment is for the benefit of the maker, the rule is that if the maker in such case neglects tor avail himself of the privilege inserted for his benefit, the note, according to its terms, becomes an absolute promise to pay money, and the complaint which so describes it conforms to its legal effect and is sufficient.”
The contract provides that, if at the expiration of two years the work done for the Nicholson Publishing Company has not amounted to $5,000, the purchase price herein stated, the said note shall be extended until such time as the full amount of $5,000 in work as above provided has been received by the Nicholson Publishing Company. Under this provision we think the defendant’ should be given the opportunity of performing the obligation in the manner clearly intended by the contract. The defendant acted unadvisedly, though in good faith, in refusing to do the work presented; but it will be remembered that no work had been offered to or required of defendant for over two years before this demand was made. Under the circumstances, the mistake which defendant made in the construction of the contract ought not to cut off its privilege and right to pay the balance of the note in work. Time was not of the essence of the contract, and the act of putting defendant in default by the demand for thfe- small amount of printing, when plaintiff had delayed the performance of the contract for more than two years, should not affect defendant’s right to still perform the contract in work, if defendant so elects.
The act of putting in default by demand that he perform, where time is not of the essence of the contract, merely creates a legal situation of default, but does not otherwise affect the rights of the parties. Watson v. Feibel, 139 La. 375, 71 South. 585,
In Perkins v. Frazer, 107 La. 390, 31 South. 773, it was held that a contractor who has unadvisedly refused to perform his contract may, while the situation of things is unchanged, retract the refusal and go on with the contract, and is not cut off from so doing by the service upon him of a notice to the effect that the contractee will hold such refusal to be a default and will sue to dissolve the contract.
It is therefore ordered and decreed that the judgment appealed from be amended, by reserving the right to the defendant to pay the amount of the judgment rendered against it in performing such work as may be given it by the Nicholson Publishing Company or the liquidators of said company, all in the manner as provided and stipulated in the contract, and in default of doing so, after due and legal demand, that this judgment shall become exigible. As thus amended the judgment appealed from is affirmed, ' the plaintiff to pay costs of appeal and the defendant to pay all other costs of the suit.
ST. PAUL, J., dissents and thinks judgment appealed from should be affirmed, except as to interest.
Rehearing refused by the WHOLE COURT.