187 So.2d 709

Earl HIRSH and A & M Pest
Control Service, Inc.

v.

Dennis MILLER.

No. 48064.

June 6, 1966.

Rehearing Denied June 30, 1966.

Sehrt, Boyle & Wheeler and Edward J.
Boyle, Sr., Albert B. Koorie, Harry Her-
man, Charles J. Rivet, New Orleans, for de-
fendant-relator.

Baldwin, Haspel, Molony, Rainold & Meyer, Conrad Meyer, III, Jerry C. Paradis, New Orleans, for plaintiff-respondent.

McCALEB, Justice.

Earl Hirsh and A & M Pest Control Service, Inc. of Georgia, the original plaintiffs herein, brought this suit against Dennis Miller and subsequently impleaded Dennis Miller Pest Controls, Inc., seeking to enjoin both from engaging in the pest control business for a period of five years from October 3, 1963; also from soliciting plaintiffs' customers, from inducing or attempting to induce, encourage or entice any of plaintiffs' employees to leave their employ and commence work for Miller, and from using the name "Miller" in any manner in connection with any form of pest control business. Plaintiffs' demands are based on certain written instruments attached to their petitions.

Both defendants pleaded in limine an exception of no right of action as to plaintiff, Hirsh, and no cause of action as to the other plaintiff, which will hereafter be referred to as "Georgia Pest Service".

The trial judge maintained the exception of no cause of action and dismissed the suit. On appeal the Court of Appeal, Fourth Circuit, sustained the exception of no right of action as to Hirsh because he had assigned

his right to his co-plaintiff. However, it found that the trial judge erred in maintaining the exception of no cause of action and, accordingly, the judgment was annulled and the case remanded for further proceedings in the court below pursuant to certain instructions. See Hirsh v. Miller, La.App., 167 So.2d 539.

When the matter was remanded, a protracted trial was had on the rule nisi for a preliminary injunction. After hearing the evidence the district judge, being of the opinion that defendant, Dennis Miller, had not violated the covenants contained in the contracts sued on, as contended by plaintiff, denied the application for a preliminary injunction. Plaintiff then appealed to the Court of Appeal, Fourth Circuit, where the judgment of the district court was again annulled [1] as to Dennis Miller, Sr. and Dennis Miller Pest Controls, Inc. and the case was remanded with instructions to the district judge to enter a preliminary injunction in favor of Georgia Pest Controls and against these defendants restraining and prohibiting them, their employees, agents and officers from engaging in the pest control business or service in the States of Louisiana and Georgia for a period of five years commencing October 3, 1963, and from soliciting any customer or customers of plaintiff or selling any pest control

1. Save as to the dismissal of Dennis Miller, Jr., defendant Miller's son, who had been joined by plaintiffs as party defendant in the suit following the remand of the case by the first decision of the Court of Appeal.

service to such customers.   See Hirsh v. Miller, 181 So.2d 310.

On application of defendants we granted certiorari and the case has been argued and submitted for our decision.

As stated above, plaintiffs' case against Dennis Miller is primarily predicated on the alleged violation of certain covenants contained in sale and purchase contracts executed between Hirsh and Miller and Miller's previous pest control company, A & M Pest Control Service, Inc. of Louisiana.

The present defendants, Miller and Dennis Miller Pest Controls Inc., a new corporation organized by Miller since he left the employ of plaintiff, have denied the contentions of plaintiff and have asserted various other defenses involving questions of law and fact to which we shall later advert.

The record reveals the following facts. Defendant, Dennis Miller, was engaged for many years until February 28, 1957 in conducting a pest control service business in the city of New Orleans.  His enterprise was successful and during the years he conducted his operations under the trade name "Miller the Killer".  In 1954, Miller incorporated his business under the name of A & M Pest Control Service, Inc. and, on February 21, 1957 when the basic executory agreement was made between Miller and Hirsh, who was acting for the Georgia Corporation, Miller owned 60% of the stock in his corporation and the remaining 40% was owned by a trust, which had been established by Miller for the benefit of his four children, the appointed trustee thereunder being Clem H. Sehrt of New Orleans.  On February 21, 1957 Hirsh, Miller, individually, and Miller's corporation entered into an executory agreement of purchase and sale whereby Hirsh agreed to buy the pest control business operated by Miller's corporation for $479,000.  In this same agreement, Miller individually agreed to lease to Hirsh certain real estate owned by him, which was being used for the operation of the pest control business and also agreed to execute with Hirsh or his nominee an employment contract which would include, inter alia, a covenant by Miller not to compete in a similar business against Hirsh or his successor for a period of five years.  The pertinent provisions of the agreement with respect to the contemplated employment contract between Hirsh and Miller reads as follows:

"As part of the consideration hereof, * * * Miller agrees to execute an employment contract with Hirsh or his nominee.  Said contract shall contain the usual and customary clauses and consist of his exclusive hiring out of his services as a public relations counsellor and salesman in the business to be conducted by Hirsh or his nominee.  Said contract shall be cancellable at any time at the option of Hirsh or his nominee.  Miller shall be paid the sum of Fifteen Thousand ($15,-000.00) Dollars as a salary for the first year on a monthly basis * * * there-

after the salary shall increase at the rate of Two Thousand Five Hundred ($2500.-00) Dollars per year. The aggregate payments contemplated for the five years, unless said employment contract is previously cancelled, is One Hundred Thousand ($100,000.00) Dollars... Said contract shall contain a covenant not to compete in a similar business, against Hirsh or his nominee, applicable for a period of five years, regardless of whether or not the employment lasts that long and even if the employment part thereof is cancelled sooner, for any reason."

Within a week from the confection of the executory agreement, the parties entered into three separate contracts pursuant thereto. On February 28, 1957, A & M Pest Control Service, Inc. of Louisiana, represented by Miller, as president and liquidator, sold to A & M Pest Control Service, Inc. of Georgia its entire business for the total sum of $479,000.00. In this sale, the various items of tangible and intangible assets of the business were separately itemized and valued, including the trade name, and in paragraph (n), the good will of the vendor was conveyed for the price of $63,484.32. On the same day, Miller executed a lease of the business premises to Georgia Pest Service and also entered into the contemplated employment contract with Georgia Pest Service for the stipulated period of five years "unless sooner terminated as will be provided herein". This contract specified payment of a monthly salary to Miller of $1250.00 for the first year; a monthly salary of $1458.34 for the second year; $1666.-67 for the third year; $1875.00 for the fourth year and $2083.34 for the fifth year. It contained a provision that "The Employer reserves the right to cancel this employment agreement at any time upon the giving of fifteen (15) days notice to the Employee" and further specified:

"It is agreed between the parties hereto that upon the employee withdrawing from the employment of the Employer, either voluntarily or otherwise, he shall not within a period of five years from the date of withdrawal as an employee of the Employer engage in business in competition to the business of the Employer either as a director, stockholder, employee, agent or salesman or in any manner whatsoever, either directly or indirectly, within the State of Louisiana or State of Georgia, and should there be a violation of this covenant not to compete, the Employer may proceed in equity or at law to enjoin any violation of this provision of this employment contract."

It is the foregoing prohibitive covenant on which plaintiffs' main cause of action depends as it is contended that Miller breached his agreement on October 3, 1963 when he left the employ of Georgia Pest Service and, a few days thereafter became engaged in the pest control business for his own account and within a short time con-

ducted that business under the name of Dennis Miller Pest Control, Inc., a corporation in which he owned all of the stock.

In addition, plaintiff alleges that Miller has breached his agreement to transfer the good will of his former corporation, A & M Pest Control Service, Inc., by soliciting the customers of Georgia Pest Service whose accounts were acquired by plaintiff at the time of the sale.

The exception of no cause of action filed by the defendants is founded on the contention that Miller's agreement not to compete with plaintiff for a period of five years is unenforceable, being contrary to the public policy of this State as provided by Act 133 of 1934 (now R.S. 23:921) declaring all such agreements to be void.

This statute, to which two exceptions not pertinent here have been added by Act 104 of 1962, provides:

"No employer shall require or direct any employee to enter into any contract whereby the employee agrees not to engage in any competing business for himself, or as the employee of another, upon the termination of his contract of employment with such employer, and all such contracts, or provisions thereof containing such agreement shall be null and unenforceable in any court, * * *".

Plaintiff professes that the law is not applicable to this case for the reason that Miller's obligation not to compete stemmed from the fact that he had sold his entire business and received valuable consideration therefor and that the employment contract was merely an incident or adjunct to the overall sale agreement.

The Court of Appeal (see 167 So.2d 539) sustained plaintiffs' position holding that, under the jurisprudence, [2] a reasonable prohibition against competition will be upheld when it is a part of the consideration for the sale of a business and its good will. The court then deduced that the three agreements of February 28, 1957, which constituted the execution of the contract of February 21st, were so interrelated as to merely be a portion of the original whole agreement and, therefore, since the consideration for the non-competitive stipulation in the employment contract was only a part of the one transaction, the statutory proscription contained in R.S. 23:921 was not applicable.

We entertain some doubt as to the validity of this ruling. Initially, in order to sustain plaintiff's position it must be assumed that Miller, individually, was the real vendor of the business whereas it appears in all agreements that he acted solely in his representative capacity of president

2. Mooreman & Givens v. Parkerson, 131 La. 204, 59 So. 122; Eugene Dietzgen Co. v. Kokosky, 113 La. 449, 37 So. 24 and Hickman v. Branan (La.App.) 151 So. 113.

and liquidator for the family corporation. Hirsh, the other contracting party, was undoubtedly apprised of the status of the corporate entity so it would have been a simple matter to have stipulated in the sales contract to be executed by the corporation that Miller, individually, as the controlling head of the corporation, would execute a non-competitive covenant therein.. See Eugene Dietzgen Co. v. Kokosky, 113 La. 449, 37 So. 24. Yet Hirsh did not require this because, apparently, he was interested in securing Miller's services as an employee of the Georgia corporation, the real purchaser. Then, too, in view of the employment agreement which was to last for five years and bound Miller not to compete for the succeeding five years, it may be plausibly argued that it was the express intent of the parties to make a special non-competitive covenant applicable only to the employment contract as this was specifically provided for in the executory contract and later carried out in the employment contract.

So it is seen from the foregoing that in order to maintain plaintiff's position certain assumptions must be made. The corporate entity of the Louisiana Pest Control Company must be disregarded and Miller considered the vendor, although there is not the slightest suggestion of fraud or misrepresentation of the facts by Miller or anyone connected with him. This, and other factors to which we have referred, when considered in connection with the public policy expressed in R.S. 23:921, render the correctness of the decision of the Court of Appeal somewhat doubtful, as we have heretofore stated. However, in view of other facts presented herein on which our decision may be rested, we will assume, without deciding, that the particular facts and circumstances of this case are such as to exclude the non-competitive covenant contained in the employment agreement from the ban of R.S. 23:921.

When the case was remanded for trial on the rule nisi for a preliminary injunction, Miller filed his answer denying that he had violated the provisions of the non-competitive covenant contained in the employment contract. He asserted that, notwithstanding the provision in the contract that his salary for each succeeding year after the first year would be increased by $2500.00, he was informed by plaintiff that it would not discharge its obligation to increase his compensation after February 28, 1958, as provided in the agreement. He averred that, by this action, plaintiff terminated his employment under the contract; and that, thereafter, he continued in the service of plaintiff on a month to month basis at a salary which was less than plaintiff was obligated to pay under the terms of the employment contract. These allegations were fully sustained by the evidence adduced at the trial and the judge concluded that, in view of the fact that plaintiff had

terminated Miller's employment under the contract on February 28, 1958, the five year non-competitive covenant expired on February 28, 1963, and that Miller had complied with his contractual obligation at the time he resumed the pest control business for himself on October 3, 1963.

On appeal to the Court of Appeal, Fourth Circuit, from the judgment denying a preliminary injunction, plaintiff contended that the five-year period did not begin to run on February 28, 1958 for the reason that Miller remained in the employ of plaintiff on a month to month basis and that the contract provides that the terminal date of the employment only becomes extant "upon the employee withdrawing from the employment of the Employer, either voluntarily or otherwise." The Court of Appeal (see 181 So.2d 310) sustained this position resolving that, under the non-competitive covenant of the employment contract, the five-year period could not begin to run until the date of Miller's withdrawal as an employee of plaintiff which withdrawal did not occur until October 3, 1963 since he remained continuously in employment from 1957 to that time. The court reasoned in part:

"If it can be said that plaintiff terminated the employment contract, it must be conceded that it had a right reserved to do so, but the *employment* was not terminated until October 3, 1963."

We do not agree with this deduction. Plaintiff was granted the right to terminate the contract of employment on giving Miller fifteen days notice and it effected such termination on February 28, 1958 when it refused to honor its obligation (allegedly for financial reasons) to increase Miller's salary to the sum of $17,-500.00 per annum. When Miller protested, Hirsh advised him of plaintiff's right to terminate the employment. Miller then made it plain that he regarded the employment contract at an end. Contemporaneously, he agreed to work for plaintiff on a month to month basis at a lesser salary than that stipulated in the contract and noted on all salary checks subsequently paid him that they were accepted under these conditions.

The termination of the employment contract constituted a withdrawal of Miller from his employment under that contract and the agreement to work for plaintiff on a month to month basis did not, in our opinion, effect a continuance of the employment under the contractual provision. We think it manifest that the clause reading that " * * * upon the employee withdrawing from the employment of the Employer, either voluntarily or otherwise, he shall not within a period of five years from the date of withdrawal as an employee of the Employer engage in business in competition * * *" must be held to refer to the withdrawal of the employee from ser-

vice *under the terms of the contract* and not to his withdrawal from service as an employee under some other separate arrangement.

■ It is to be borne in mind that restrictive covenants contained in agreements of this sort are in derogation of the common right and, hence, should be strictly construed against the party seeking their enforcement. Applying such construction here, plaintiff's contention cannot be sustained. And this is especially true in this case for another reason. For an examination of the executory contract, on which plaintiff relies heavily for other purposes, plainly shows that the parties never intended or contemplated that the non-competitive covenant was to extend for more than five years from the date of the sale of Miller's business. That original agreement provides that the employment contract shall contain a covenant that Miller will not "* * * compete in a similar business, against Hirsh or his nominee, *applicable for a period of five years,* regardless of whether or not the employment lasts that long and even if the employment part thereof is cancelled sooner, for any reason." (Italics ours.) Accordingly, if the nature of the withdrawal applicable to the case be regarded as equivocal, the executory agreement furnishes a safe guide for discerning the original intent of the parties

as to the time limit during which Miller would be banned from competing.

■ Since we find that the five year non-competitive covenant expired on February 28, 1963, five years from the date that Miller was withdrawn from his employment under the contract, this would ordinarily end the case. However plaintiff contends (we believe as an alternative proposition) that Miller, upon engaging in the pest control business on October 3, 1963, solicited some of the customers who had patronized him at the time of the sale and that, therefore, he violated the implied warranty accompanying the sale of the good will of the business. In support of this proposition, plaintiff's counsel rely heavily on Lindstrom v. Sauer (La.App.) 166 So. 636 (1936); J. Alfred Mouton Inc. v. Hebert (La.App.) 199 So. 172 (1940); Ballero v. Heslin (La.App.) 128 So.2d 453 (1961) and 24 Am.Jur. Verbo "Good Will" Sec. 23, page 817.

As we have noted above, we understand that counsel are making this argument as an alternative position—that is, in the event the Court should deduce that the non-competitive clause in the employment contract is unenforceable, being violative of R.S. 23:921. If we are mistaken in our belief and counsel are suggesting that the implied warranty not to solicit former customers

of the business may be enforced even when there is a binding non-competitive covenant contained in the sale contract, then we hold that none of the cases and other authorities upon which counsel depends is applicable. This is so because it would be unreasonable to conclude that such a restriction against future solicitation of the purchaser's customers was to be implied by virtue of the sale when the parties to the contract of sale had expressly provided against all competition by the vendor as specified and had included in the act a restrictive covenant which had been fulfilled, as in this case. Cases like Lindstrom v. Sauer, Mouton v. Hebert and others too numerous to mention are founded on the theory that, notwithstanding that the vendor of a business is at liberty to immediately engage competitively with the purchaser in the same business when the contract of sale does not contain a non-competitive covenant (see Bergamini v. Bastian, 35 La.Ann. 60, 48 Am. Rep. 216; Liquidators of Nicholson Pub. Co. v. E. S. Upton Print. Co., 152 La. 270, 93 So. 91 and Davis v. Dees, 211 La. 229, 29 So.2d 774) he may not, where he has sold the good will of his business, be permitted to destroy the value of such good will by canvassing directly the old customers " * * * endeavoring to dissuade them from dealing with the purchaser of the good will, and soliciting them to trade with the vendor." 24 Am.Jur. Sec. 23, page 817.

However, where there is a non-competitive clause in the contract to sell, this rule has no relevance because, when the vendor is prohibited from competing for a reasonable length of time after the sale, he unquestionably must be considered as having delivered not only the business as a going concern but accounts of all customers patronizing the business. Under an express agreement restricting the vendor from competing during a specified time, he cannot solicit the purchaser's customers because he is proscribed from engaging in that business during the restricted period. But when that time expires, as in this case, the vendor, upon re-entering the same business, is entitled to compete in any legitimate way and this includes the solicitation of his former customers. For the very fact that a non-competitive covenant is included indicates that the parties intended that competition without limitation was to be permitted after the prescribed time has elapsed.

All of the authorities relied upon by plaintiff are factually inapposite for they deal with situations where the vendor, immediately or within a short period after the sale of his business and the good will thereof, did not effect a delivery of such good will or partially evicted the purchaser by solicitation of his former clientele.

So, even though it could be deemed proper to imply a covenant banning solicitation of former customers when the contract of

sale contains an express covenant against all competitive activity, the ruling in the case would be the same under the facts— inasmuch as any implied restriction against solicitation can exist for only such a reasonable time as to allow the old customers to attach themselves to the purchaser's business. See Suburban Ice Mfg. Co. & Cold Storage Co. v. Mulvihill, 21 Ohio App. 438, 153 N.E. 204 (1926).

In the matter at hand, there was no practice to deceive plaintiff or defraud it of the good will sold and transferred by Miller. More than six years passed from the time of the sale to the time when Miller engaged in business as a competitor and began soliciting some of his former customers. After the passage of such a long period the plaintiff had more than ample time for the old customers to attach themselves to its business and, in the absence of fraud, there could be no injunction against Miller's solicitation.

In view of the decision we have reached, it is unnecessary for us to consider the other defenses raised by Miller and his co-defendant.

For the reasons assigned, the judgment of the Court of Appeal is reversed and that of the district court is reinstated and affirmed. All costs are to be paid by plaintiff.

187 So.2d 715