251 So.2d 161 (1971)
259 La. 646
William E. McCRAY, M.D. and William P. Cloyd, Jr., M.D.
v.
Jimmie D. COLE, Ph. D.
No. 50754.
Supreme Court of Louisiana.
June 7, 1971.
Dissenting Opinion June 28, 1971.
Rehearing Denied June 28, 1971.
McBride & Brewster, Norman P. Foret, Lafayette, for defendant-applicant.
Davidson, Meaux, Onebane & Donohoe, John G. Torian, II, Lafayette, for plaintiffs-appellees-respondents.
DIXON, Justice.
The plaintiffs are psychiatrists who employed the defendant, a psychologist. They sue to enforce a provision in an employment contract for "liquidated damages" of $6000.00, which the plaintiffs claim have become due because the defendant left their employment and established the practice of psychology in Lafayette. Both plaintiffs and defendant filed motions for summary judgment. The plaintiffs' motion for summary judgment was supported by the deposition of the defendant. The trial court overruled the defendant's motion for summary judgment and sustained the plaintiffs' motion for summary judgment, and rendered judgment in favor of the plaintiffs and against the defendant in the amount of $6000.00. The defendant appealed, and the Court of Appeal, 236 So.2d 863, affirmed the trial court.
*162 The trial court gave written reasons for its judgment, in which it concluded that "agreements legally entered into have the effect of laws on those who have formed them and Courts are bound to give legal effect to contracts according to the true intent of the parties. In the cases now before the Court, the stipulations for the payment of liquidated damages were a lawful promise based on reasonable grounds and supported by consideration."
The contract of employment entered into between the plaintiffs and defendant was executed, according to the petition, on November 4, 1968. That agreement provided for the compensation of defendant, arrangements for space for his practice, vacation, sick leave, and certain obligations which the defendant undertook on behalf of the plaintiffs. The paragraph containing the provision for liquidated damages is as follows:
"It is agreed that this association shall be effective in all of its terms and conditions as of August 1, 1967 and shall continue until such time as either party gives the other party four months written notice of termination. It is further agreed that in the event James Cole, Ph. D. should withdraw from this association and should commence the practice of psychology within the Parish of Lafayette, Louisiana, then in that event within thirty days after his beginning to practice he will pay unto the clinic the sum of $6,000.00 as liquidated damages. However, the provision for liquidated damages shall not apply in the event James Cole, Ph.D. is given notice of termination of this agreement by the clinic; then in that event James Cole, Ph.D. shall have no obligation to the clinic whatsoever. This proviosion shall not apply after James Cole, Ph.D. has refrained from practice of psychology within the Parish of Lafayette, Louisiana for a period of two years."
About the middle of April, 1969, upon being presented with a new contract, apparently occasioned by a re-arrangement of the affairs of the employers, the defendant determined to leave the employ of the plaintiffs.
The defendant contends that the provision for liquidated damages violates R.S. 23:921:
"No employer shall require or direct any employee to enter into any contract whereby the employee agrees not to engage in any competing business for himself, or as the employee of another, upon the termination of his contract of employment with such employer, and all such contracts, or provisions thereof containing such agreement shall be null and unenforceable in any court, provided that in those cases where the employer incurs an expense in the training of the employee or incurs an expense in the advertisement of the business that the employer is engaged in, then in that event it shall be permissible for the employer and employee to enter into a voluntary contract and agreement whereby the employee is permitted to agree and bind himself that at the termination of his or her employment that said employee will not enter into the same business that employer is engaged over the same route or in the same territory for a period of two years." (Act 133 of 1934 as amended by Act 104 of 1962).
The plaintiffs, on the other hand, contend that the provision for liquidated damages in the employment contract does not violate R.S. 23:921 because it does not prohibit the defendant from engaging in competing business. With this contention the Court of Appeal agreed, pointing out that "plaintiffs are not attempting to prohibit Dr. Cole from practicing in Lafayette, but rather they seek the liquidated damages which Dr. Cole agreed to pay." The Court of Appeal further found that no provision in R.S. 23:921 prohibited "liquidated damages where the employee competes against his former employer," then went on to hold *163 that if the contract "is not supported by adequate consideration and has the effect of prohibiting him from engaging `in any competing business for himself, or as the employee of another. Upon the termination of his contract of employment with such employer,' then the terms of this statute declare it to be null."
The Court of Appeal then examined the "reasonableness of the restriction and whether or not the provision is supported by adequate consideration," to determine whether the agreement prohibited the defendant from competing with the employer. Although the matter was before the Court of Appeal on a motion for a summary judgment, supported by no affidavits and no evidence except the deposition of the defendant, the Court of Appeal found the liquidated damages of $6000.00 to be reasonable. The record before the court on the motion for summary judgment does not sustain the findings used by the Court of Appeal to support its conclusion that the provision for $6000.00 liquidated damages was "reasonable."
In brief before us, the plaintiffs rely on three cases in which provisions for liquidated damages were enforced. In the first, Aetna Finance Company v. Adams, 170 So.2d 740 (1965), the court specifically found that the employment contract came within the proviso of R.S. 23:921, which had been enacted in 1962. The court said, page 744:
"In summary, Defendant, who was the recipient of training at the expense of his employer, voluntarily entered into a valid, bilateral commutative contract under which the Defendant, as part of the consideration of his employment by Plaintiffs and recompense to be derived therefrom in accordance with LSA-R.S. 23:921, voluntarily covenanted with his employer not to engage in any competing business for himself or as the employee of another competing business for one year after his termination of employment with Plaintiffs within a radius of 25 miles of Plaintiffs' offices."
In the second, Beneficial Finance Company of Monroe v. Aldridge, 200 So.2d 681 (1967), the only question discussed and decided by the Court of Appeal was whether an injunction would lie to enforce the non-competition agreement when the contract had specified liquidated damages. The Court of Appeal found that there was no irreparable injury, since the damages could be compensated in money, and irreparable injury was a necessary condition precedent to the issuance of injunctive relief. The Court of Appeal merely affirmed the district court judgment, which had sustained an exception of no cause of action directed at the prayer for injunctive relief.
In the third case relied on by plaintiffs, World Wide Health Studios, Inc. v. Desmond, 222 So.2d 517 (1969), there was a demand by the employer against a former employee for an injunction and liquidated damages for violation of a non-competition agreement in an employment contract. The Court of Appeal denied the injunction but allowed certain liquidated damages, finding that the employment was governed by the 1962 proviso in R.S. 23:921, since the employer had incurred expense in training the employee and in advertising the business.
Each of the cases relied on by the plaintiffs is inapplicable to the case before us. There is no contention made here that the employer incurred any expense either in the training of the defendant or in advertising the association, an expense necessary before the plaintiffs can be brought within the exception stated in R.S. 23:921.
We find this contract of employment violates the provisions of R.S. 23:921.
The penal clause is not operative until the employee (1) withdraws from the employment and (2) commences to practice psychology in Lafayette Parish. The contract is the law between the parties, say the plaintiffs. But the contract, in order *164 to be valid, must have "a lawful purpose." C.C. 1779. Civil Code article 1893 provides: "An obligation without a cause, or with a false or unlawful cause, can have no effect."
A contract has an unlawful cause "when it is forbidden by law." C.C. 1895. The purpose of the penal clause, or its "cause," was to prevent the termination of the employment contract. The contract itself provided that either party might terminate the agreement on four months written notice. In the absence of such written notice, the contract was for an indefinite term. The penal clause became operative only upon the defendant's beginning the practice of psychology within Lafayette Parish, after withdrawing from his employment. Plaintiffs emphasize that the defendant does not obligate himself to remain within the employ of the plaintiffs, nor does he obligate himself to refrain from the practice of psychology within the Parish of Lafayette. Nevertheless, since the only condition upon which the penal clause becomes operative is the defendant's practice of psychology in Lafayette Parish, that can be the only object, the only purpose, and the only cause supporting the penal obligation.
It is argued by the plaintiffs that the penal clause is simply to compensate the plaintiffs for damages they would incur upon the defendant's withdrawal from the employment agreement. The nature of such damages is not explained in the record.
"Liquidated damages" is a term which our courts have held to be synonymous with the penal clause defined in Civil Code article 2117 and following. On the last occasion on which Pennington v. Drews, 218 La. 258, 49 So.2d 5 (1950), was before this court, it was stated, at 49 So.2d 9:
"In other words, the penal clause, under our law, is synonymous with liquidated damages. This has been firmly established in the jurisprudence. * * *"
The Civil Code defines the penal clause as a secondary obligation. C.C. 2117. Civil Code article 2123 provides that the "nullity of the principal obligation involves that of the penal clause." See Richmond v. Krushevski, 243 La. 777, 147 So.2d 212, 214 (1962): "Enforcement of a penal clause when the primary obligation is unenforceable has never been considered a possibility under the Civil Law."
To determine the nature of the unstated principal obligation, the agreement before us must be strictly construed against the parties seeking its enforcement. In Hirsh v. Miller, 249 La. 489, 187 So.2d 709, 714 (1966), a case involving a non-competition agreement, it was stated:
"It is to be borne in mind that restrictive covenants contained in agreements of this sort are in derogation of the common right and, hence, should be strictly construed against the party seeking their enforcement."
Since the principal obligation supporting the penal clause is the agreement not to engage in the practice of psychology in Lafayette Parish for two years, a business which would compete with that of his employer, R.S. 23:921 renders the agreement null and unenforceable.
The defendant's motion for summary judgment is directed at the proposition that the contractual provision sued on by the plaintiffs is unenforceable. With this conclusion we agree.
Therefore, for these reasons, the judgment of the Court of Appeal is reversed, and there is now judgment in favor of the defendant, Jimmie D. Cole, and against the plaintiffs, William E. McCray and William P. Cloyd, Jr., granting the defendant's motion for a summary judgment, rejecting the demands of the plaintiffs, all at plaintiffs' cost.
SUMMERS, J., dissents and assigns reasons.
TATE, J., recused, having participated in Court of Appeal consideration.
*165 SUMMERS, Justice (dissenting).
I do not agree that the contract in question violates the provisions of Section 921 of Title 23 of the Revised Statutes. Nowhere in the contract is it stipulated that the employee, Dr. Cole, agreed not "to engage in any competing business for himself, or as the employer of another, upon the termination of his contract of employment." What he has agreed to do is pay $6,000 as liquidated damage if he engaged in practice. In my view he could lawfully agree to that condition.
This Court has enforced a similar contract before. In Martin-Parry Corporation v. New Orleans Fire Detection Service, 221 La. 677, 60 So.2d 83 (1952), the contract restraint under consideration provided that the employee would, among other things, at the termination of the contract, refrain from using the employer's trade name and that he would not,
* * * prior to the termination hereof, or for a period of two (2) years after the termination hereof, disturb, hire, entice away, or in any other manner persuade any employee or dealer of the Company to discontinue his relation to the Company as an employee or dealer, as the case may be.
In overruling a lower court judgment holding that there was "no mutuality of obligations" in such a contract, this Court held:
We are not in accord with the ruling. The agreement is a valid, bilateral commutative contract under which the defendant, as part of the consideration of his employment by plaintiff and the recompense to be derived therefrom, promised to desist from "enticing away," upon termination of his employment and for two years thereafter, the other employees and dealers in the service of plaintiff.
Although the Martin-Parry Case is not identical with the case at bar, the principle, that an employee may bind himself with his employer to restrain his activities after the termination of his employment, is approved by this Court, so long as that restraint does not run counter to the prohibitions contained in Section 921 of Title 23 of the Revised Statutes.
In the case at bar, when the employee agreed to pay the $6,000 as liquidated damage if he should engage in practice in Lafayette, he was not contracting "not to engage in any competing business." He was agreeing that if he did he would pay $6,000. If this condition or restraint is reasonable and does not amount to an obstacle to his practicing his profession, I am of the opinion it is enforceable. Note, 40 La.L.Rev. 424 (1966). The $6,000 does not amount to a prohibition against the right to practice. It is merely an agreement to compensate the employers for the time and expense resulting from the termination of the contract by the employee.
The record indicates that the employee, Dr. Cole, earned in excess of $30,000 per annum and the penalty provision is therefore no insurmountable problem to his engaging in the practice. As this Court declared in the Martin-Parry Case:
Accordingly, as long as the object of the contract is lawful, it is the duty of the court to enforce it as written. In the case at bar, the stipulation of the defendant that he would refrain, after the termination of the contract, from capturing for his own account or for others the employees and dealers of the plaintiff was a perfectly lawful promise based on reasonable grounds and supported by valuable consideration, i. e., the salary and emoluments to be obtained in the position of Branch Manager.
I cannot see why Dr. Cole, the employee here, could not likewise agree to pay $6,000 if he terminated the contract and practiced in Lafayette, in consideration of the clinic facilities which were made available to him by him employers and the very adequate salary and other emoluments he received in the employment contract.
I respectfully dissent.