WATSON, Judge ad hoc.
This is a suit arising from an employment contract, the former employer and plaintiff being All State Credit Plan Hou-ma, Inc. (hereafter called “All State”), and the former employee and defendant being Donald Weidenbacher. The litigation has been before this court on one prior occasion when the sustaining of an exception of no cause and no right of action by the trial court was reversed and the matter was remanded for trial on the merits. See 234 So.2d 774 (La.App. 1 Cir. 1970); writ refused, 256 La. 378, 236 So. 2d 504 (1970).
Following the remand, the case was heard in the trial court and judgment was rendered in favor of the defendant. From the adverse judgment, the plaintiff now appeals.
The facts are that Donald Weidenbacher was employed with All State from 1961 until 1969. His original employment was as a co-manager of an office of the finance company. During the term of his employment, he received promotions until at the time of his resignation he was supervisor over several offices.
On April 6, 1967, Weidenbacher signed an employment contract under the terms of which he agreed in the event of his termination not to engage in certain activities, mostly of the type which would be in business competition with his employer. We do not find it necessary to reproduce the entire contract but we will quote the first paragraph which reads as follows:
“1. The employee understands that his duties require continuous special training and that the company has incurred and/or will incur expense in his training and in the advertisement of the business that the company is engaged in, and also understands that the company has disclosed and/or will disclose to him knowledge concerning its trade secrets, and business methods and procedures, including, names of borrowers and dealers, personnel records, training and operational manuals, and other things which constitute the property of the company and which enable the company to compete successfully in its business. In consideration of employment and these disclosures, the employee agrees:
“a. To treat all such matters relating to the company’s business as confidential information entrusted to him solely for use in his capacity as an employee of the company, and not to divulge such information in any way to persons outside of the company’s employ during or after his employment.
“b. In the event of termination of his employment for any reason, he will not under any circumstances (i) retain or use in any way any information written or otherwise concerning active or paid out accounts of the company, its methods of operation, or transmit or reveal any of such information to persons in competition with the company; (ii) *697 solicit any active or paid out customers of the company; (iii) engage directly or indirectly in any activity to loan to, pay off or pay on any active customer accounts of the company; (iv) solicit any of the company’s active dealers; or (v) publish his name or photograph, or cause or permit same to be published, or to be used in connection with advertising, by or on behalf of any business in competition with the company, which makes reference to his former employment with the company, or to his having done business with customers or former customers of the company, or which tends to identify the former employee with the company.
“c. Not to influence or attempt to influence any other employee of the company to terminate his employment to work for any competitor of the company.” (TR.7)
Paragraph 3 provided that the company (All State) reserved the right to terminate Weidenbacher’s employment at any time, with or without cause.
Paragraph 6 provided that the agreement would be effective for a period of two years following termination of employment and would be effective in each parish within which the employee had worked for the employer.
The only other pertinent provision of the contract is that it provided, in the event that the employee breached any part of the agreement, the employer was entitled to obtain injunctive relief and/or to recover damages of $20,000, agreed to as liquidated damages.
There is no question that Weidenbacher signed the contract along with a representative of All State.
The other significant document in the record is a letter under date of November 10, 1967 which was sent out by All State to its employees to assist in obtaining their signatures on employment contracts. The defendant contends that this instrument explains, modifies and amends the employment contract which he signed. This letter reads as follows:

"To All Employees:

Re: Employment Contracts
“Most of you understand our thinking in regards to employment contracts, and even though we have previously asked all employees to sign a contract, we have been willing to go along with those of you unwilling to do so.
“Last week, our thinking changed due to the actions of a recent employee. It was most difficult for us to believe that an honest and trusted ex-employee would do anything against our interest, but that is what happened. You cannot imagine how deeply disturbed we were when listening to a conversation in which an offer to buy a list of present and former borrowers was made to one of our peo-pie.
“Because of this, we do not feel that the asking for employment contracts is too much to expect from any of you. We sincerely trust everyone of our employees, or else they would not be in the company’s employment. We sincerely do not intend to exercise the contract unless a person commits a dishonest act against our interest, and we hope that the worth of these contracts will always be as worthless as the paper on which they are written. We sincerely feel that the signing of a contract is not a reflection upon the trust, honesty or integrity by or on the part of either party. Accordingly, we are taking the position herein that we do expect all of our employees to give us the assurance which we want by signing a contract, now.
“Enclosed are the necessary forms.” (TR. 24)
The letter was circulated to all employees of the company in an attempt to obtain the execution of employment contracts and it was signed by Leon Katz, President of All State.
*698 The contention of plaintiff is that, upon his resignation from All State, Weiden-bacher commenced his own business in a finance company known as “Don’s House of Money” located in Houma. Further, the plaintiff contends that defendant solicited customers of All State, that he made loans to customers of All State and that he paid off certain active accounts that customers had with All State by making loans to them. The evidence, we believe, when fairly interpreted establishes that defendant did in fact undertake to pursue customers of his former employer and to pay off their loans with new loans from his business which would be in violation of the employment contract, if that contract is valid.
Defendant’s principal contention is that the letter of November 10, 1967 and certain oral agreements made by All State with him prior to that time had the effect of invalidating the employment contract.
The original action brought by plaintiff sought both injunctive relief and a money judgment against defendant for liquidated damages in the amount stipulated by the contract. Since the two year term of non-competition has expired, the question of injunctive relief is moot and has been abandoned by plaintiff. However, there remains the demand for damages. The fundamental issue on appeal is whether the employment contract was valid.
 The only witnesses whose testimony is significant on the issue of the validity of the contract are Leon Katz, the President of All State, Weidenbacher and Weidenbacher’s witness, Eugene Thompson. The pertinent documentary evidence is, of course, the employment contract itself and the letter of November 10, 1967. The letter was held to be relevant and admissible by the trial court because he deemed it a written declaration of company policy relative to the employment contract of Weidenbacher and of other employees of the company who were being urged to sign the same contract or who had already signed a contract of similar form. He said:
“The testimony reflected that this document was a part of the original agreement or understanding between the plaintiff and its employees when the contract in question was originally signed and that the plaintiff through its representatives had made such declarations to its employees prior to the signing of the original contract. The Court is of the opinion that parol evidence may be introduced to abrogate or revoke agreements that are not required to be in writing. Christ v. Christ [La.App.] 251 So.2d 197, Southern Scrap v. Commercial Scrap [239 La. 958] 120 So.2d 491, and X-L Finance v. Humble [La.App.] 186 So.2d 883.” (TR. 91 and 92)
With this observation, we agree.
We think significant the testimony of Mr. Katz of All State who said that the letter referred not only to the employment contract of others but to the contract of Weidenbacher which had already been signed. Further, when pressed closely on cross-examination, Mr. Katz admitted that Weidenbacher had performed no dishonest act during the time of his employment. He also testified that he was not aware of any benefits to Weidenbacher derived from the signing of the contract.
Weidenbacher himself testified that he had been told that the contract of employment would not be enforced unless an employee committed a dishonest act and we think that the testimony of the defendant was corroborated on this point by Eugene Thompson, who is a former employee of All State, now working for another finance company. He testified that his understanding was that the contract was not to be enforced unless an employee performed a dishonest act in his employment.
Therefore, this court finds itself in agreement with the trial court that “ . . . the various employees were induced into signing these agreements based *699 on the proposition that they would not be enforced unless the employees commit a dishonest act against the company.” (TR., 92)
Also, as the trial court observed:
“ . . . the first sentence of the document of November 10, 1969 reads; ‘most of you understand our thinking in regards to employment contracts.’ This is suggestive of the fact that the contract in question was not to be enforced in the absence of a dishonest act. The action of the defendant did not constitute a dishonest act.” (TR. 92).
Citing Hirsh v. Miller, 249 La. 489, 187 So.2d 709 at 714 (1966), the trial court noted that restrictive agreements contained in employment contracts are in derogation of the common right and are to be strictly construed against the party seeking enforcement. We agree that employment contracts should be so construed when valid.
We also note our concern abcüt the possible absence of cause (or “consideration” as it is called in the common law) on the part of the employee for signing a contract such as the one in question. It may be as held in Aetna Finance Company v. Adams, 170 So.2d 740 (La.App. 1 Cir. 1964), writ refused 247 La. 489, 172 So.2d 294 (1965), that there is cause in the continued employment of the employee, his salary and other benefits of employment, but the question which may be deserving of reconsideration is what assurance has the employee upon the signing of a contract, such as the one before us, which provides that the employment may be discontinued at any time by the employer, with or without cause, that his salary and other benefits of employment will continue. Cf. Peltier v. Hebert, 245 So.2d 511 (La.App. 3 Cir. 1971). Perhaps the situation would be different if the employment contract were signed at the beginning of employment and if there were some specific term of employment guaranteed the employee but it is entirely possible that an employee could sign an employment contract restricting his future freedom on one day and be fired the next day. This would reflect that he had no real cause in the law for signing the contract ; he got nothing in the bargain.
Under our view of the present case we do not reach the question of whether the employer sustained substantial training expenses on behalf of the defendant or whether substantial advertising expenses were incurred. See National Motor Club of Louisiana, Inc. v. Conque, 173 So.2d 238 (La.App. 3 Cir. 1965); Weight Watchers of La., Inc. v. Ryals, 289 So.2d 531 (La. App. 1 Cir. 1973). '
Therefore, for the reasons assigned we agree with the trial court that the contract is not enforceable and that the claims of plaintiff should be dismissed. Costs of the appeal are taxed against plaintiff-appellant.
Affirmed.